RINEHART KUELLING, Appellant, *v.* RODERICK LEAN MANUFACTURING COMPANY, Respondent.

1. FRAUD — LIABILITY OF MANUFACTURER TO THIRD PERSON FOR INJURIES RECEIVED FROM MACHINES SOLD BY AND KNOWN TO HIM TO BE DEFECTIVE. One who sells an article knowing it to be dangerous by reason of concealed defects is guilty of a wrong without regard to the contract and is liable in damages to any person, including one not in privity of contract with him, who suffers an injury by reason of his willful and fraudulent deceit and concealment.

2. SAME.   While a manufacturer has the right to sell a defective machine, if he gives notice of the defect to the purchaser, who in turn has the same right, neither has the right, with furtive intent, to completely conceal the defect and sell the machine as sound and safe, intending it to be used as such by any one into whose possessession it might lawfully come, when the natural result would be the infliction of an injury upon any person who used it.

3. ACTION FOR DECEIT.   The manufacturer of a land roller, who uses in its construction a tongue made of wood unfit for the purpose, in that it was cross-grained, had a knot in it and also a knothole, and who plugs up the hole, and then by means of putty and paint conceals the defects so that they cannot be seen by inspection, is liable in an action for damages for fraud and deceit, for injuries sustained in consequence of such defects by a person who purchased the machine from a dealer who had purchased it from another dealer to whom the manufacturer had sold it.

*Kuelling* v. *Lean Mfg. Co:,* 94 App. Div. 613, reversed.

(Argued October 17, 1905; decided November 21, 1905.)

APPEAL from a judgment, entered May 28, 1904, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, overruling plaintiff's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for defendant upon a nonsuit directed at the Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles Van Voorhis* for appellant.   A manufacturer is liable to third persons with whom no contractual relation exists, for defects in his articles which are such as render the article in itself imminently dangerous to human life.   (*Devlin* v. *Smith,* 89 N. Y. 477; *Coughtry* v. *G. W. Co.,* 56 N. Y. 124; *Kahner* v. *O. E. Co.,* 96 App. Div. 169; *Davies* v. *P. H. E. Co.,* 65 Hun, 573; *Loop* v. *Litchfield,* 42 N. Y. 351; *Losee* v. *Clute,* 51 N. Y. 494; *Swan* v. *Jackson,* 55 Hun, 196; *Ennis* v. *Gray,* 87 Hun, 356; *B. B. Co.* v. *Cooper,* 5 L. R. A. 612; *Schubert* v. *Clark Co.,* 49 Minn. 335.)   This action is based upon the intentional, willful, malicious, negligent and

fraudulent act of the defendant, in putting in, for the tongue of this roller, a piece of cross-grain black oak, which was wood unfit for that purpose, and which had a large knot in it, and in addition thereto, a large knothole just in front of the point where the evener and whiffletrees are attached, which knot-hole the defendant intentionally concealed with the plug of soft wood nailed in, and then the knot, and the plug and the hole, and the cross-grain of the wood and the kind of wood were covered up and concealed by the defendant, with putty and paint, so that the defects could not be seen by inspection, and the tongue was placed in the roller so that the knot and plug were on the underside. (16 Am. & Eng. Ency. of Law, 434; 21 Am. & Eng. Ency. of Law [2d ed.], 477; Bigelow on Torts, 313; *Gardiner* v. *Heartt,* 3 Den. 232; *Heizer* v. *K. & D. Mfg. Co.,* 15 L. R. A. 821; *Wellington* v. *D. K. O. Co.,* 104 Mass. 64; *C. T., etc., Co.* v. *A. B. Co.,* 174 N. Y. 488; *Derby* v. *Flintner,* 118 Mass. 131.) The evidence established privity of contract between the plaintiff and the defendant, and required the submission of that question to the jury. (*Cole* v. *Mann,* 3 T. & C. 380; 62 N. Y. 1; *Austin* v. *Dye,* 46 N. Y. 500; *Ballard* v. *Burgett,* 40 N. Y. 314; *FitzGerald* v. *Fuller,* 19 Hun, 180; *Frank* v. *Batten,* 49 Hun, 91; *Sturm* v. *Boker,* 150 U. S. 312.) The defective construction of this roller and the concealment of these defects was the proximate cause of the injury to the plaintiff. (*Travell* v. *Bannerman,* 71 App. Div. 439; *Halstead* v. *Village of Warsaw,* 43 App. Div. 39.)

*Cogswell Bentley* and *S. D. Bentley* for respondent. There was no evidence which tended to prove that the defendant negligently placed upon the market an instrument "imminently dangerous to human life." (*Loop* v. *Litchfield,* 42 N. Y. 351; *Losee* v. *Clute,* 51 N. Y. 494; *Curtin* v. *Somerset,* 140 Penn. St. 70; *Huset* v. *J. I. C. Co.,* 120 Fed. Rep. 865; *Heizer* v. *Mfg. Co.,* 110 Mo. 615; *Winterbottom* v. *Wright,* 10 M. & W. 109; *Longmead* v. *Halliday,* 6 Eng. L. & E. 562.)

BARTLETT, J.   This action has been twice tried.   The first trial resulted in a verdict for the plaintiff in the sum of $3,040.00; the judgment entered on this verdict was reversed and a new trial ordered.   The second trial resulted in a nonsuit, the trial judge ordering the plaintiff's exceptions to be heard in the first instance by the Appellate Division; the latter court overruled the exceptions, denied motion for a new trial and ordered judgment for the defendant upon the nonsuit.   The Appellate Division wrote no opinion, but rested its decision on the opinion of McLENNAN, P. J., handed down on the first appeal.   (88 App. Div. 309.)

The plaintiff is a farmer, residing in East Penfield, Monroe county, in this state; the defendant is a foreign corporation organized under the laws of the state of Ohio, and engaged in the manufacture and sale of farming implements, its manufactory being located at Mansfield, in that state.

A few weeks prior to April, 1902, the defendant sold to the firm of Weaver, Palmer & Richmond, who were engaged in the business of selling agricultural implements in the city of Rochester, a certain road roller, with a tongue to which was attached a team of horses when in use.   A few days after this sale the purchasers sold the roller to the firm of Fuller & Barnhart, dealers in agricultural implements at Fairport, Monroe county, in this state.   In April, 1902, the plaintiff purchased the road roller of the firm of Fuller & Barnhart, used it a short time in the spring on his farm, stored it in a covered shed until about the first day of the following September, when he had occasion to use it again in the conduct of his ordinary farm work, and while so engaged with two horses attached thereto, the tongue broke, precipitating him from a seat which was attached to the rear end of the tongue immediately over the roller, causing the horses to run away.   Plaintiff clung to the reins for a short distance, was compelled to release his hold and the roller, weighing some seven hundred pounds, passed over him, inflicting severe injuries.

This action was brought by the plaintiff against the defendant as the manufacturer of this roller, and is based upon the

6

allegation that in constructing it the defendant " intentionally, wilfully, maliciously, negligently and fraudulently" put into it a tongue made of cross-grained black or red oak which was unfit for that purpose; that the tongue had a knot in it, and in addition a large knothole just in front of the point at which the evener and whiffletrees were attached; that the defendant concealed this knothole with a plug of soft wood nailed in, and then the knot, the plug, the hole, the cross-grain of the wood and the kind of wood used were covered up and concealed by the defendant with putty and paint so that the defects could not be seen by inspection; that the tongue was placed in the roller so that the knot and plug were on the underside; that the roller by reason of these defects was dangerous to the life and limbs of any person who should use it, and that the defects aforesaid made the tongue so weak that it broke as before stated at the time of plaintiff's injury and was the cause thereof.

A rather unusual state of affairs is presented in the history of this litigation. This action is based upon the allegation that the defendant " intentionally, wilfully, maliciously, negligently and fraudulently" placed in this roller a tongue containing certain defects and concealing the same, as stated. It appears, however, that at the first trial the case was tried upon the theory of negligence and the jury passed upon no other question. The jury rendered a verdict for the plaintiff in the sum of $3,040.00. The Appellate Division on reviewing the judgment entered upon this verdict stated in its opinion written by McLENNAN, P. J., as follows: " The case was submitted to the jury purely and simply as an action for negligence. While in the complaint it was alleged that the defendant 'wilfully, maliciously, negligently and fraudulently' put the defective tongue into the roller in question, intending that such implement should be sold in the open market, and concealed such defect, knowing that when used it would break and probably occasion injury to the person using it, that question was not left to the jury for determination. The learned trial court charged the jury in substance that no contractual

relation or privity existed between the plaintiff and the defendant; that 'the basis of the action is negligence,' and that in order to recover the plaintiff was only required to establish, by a fair preponderance of evidence, that the accident was caused through the negligence of the defendant and without negligence on the part of the plaintiff. The court also charged that in order to establish defendant's negligence and entitle the plaintiff to recover it was necessary for the jury to be satisfied upon the evidence that the land roller in question, with the defective tongue, was a machine or implement imminently dangerous to human life, but charged, as matter of law, that a land roller was not intrinsically thus dangerous, but was an implement in ordinary and everyday use and of simple construction. The jury determined each of the questions submitted in favor of the plaintiff."

The learned judge in his able opinion dealt only with the issue of negligence submitted to the jury. On the present appeal the counsel for the appellant presents what we deem the controlling question, the willful and fraudulent act of the defendant as alleged in the complaint. We will assume for the purposes of this case that this roller was not a machine imminently dangerous and likely to injure any person using it.

We express no opinion as to the liability of the manufacturer or seller of a machine or vehicle to third parties in case of negligence, in the absence of fraud or deceit, whether the machine or vehicle be in its original state imminently dangerous to human life or made so by the subsequent act of the manufacturer or seller. The case at bar, in the view we take of it, does not involve the law of negligence, but is controlled by considerations resting upon the law applicable to willful and fraudulent deceit and concealment.

In England the Court of King's Bench in 1789 in the case of *Pasley* v. *Freeman* (3 Durnford & East, 51) held that a false affirmation made by the defendant with intent to defraud the plaintiff, whereby the plaintiff receives damage, is the ground of an action upon the case in the nature of deceit. In such an action it is not necessary that the defendant should

be benefited by the deceit or that he should collude with the person who is.

In *Upton* v. *Vail* (6 Johns. 181) Chief Justice KENT, in commenting upon the case cited, said : " I have carefully examined the reasoning of the judges in that case and in the subsequent cases which go to question or support the soundness of that decision, and I profess my approbation of the doctrine on which it was decided. The case went not upon any new ground, but upon the application of a principle of natural justice, long recognized in the law, that fraud or deceit, accompanied with damage, is a good cause of action. This is as just and permanent a principle as any in our whole jurisprudence." We have here the recognition of the general principle upon which this and similar actions must rest, to wit, that fraud or deceit with damage is a good cause of action.

In many of the cases presented to the courts under this principle of law the litigation is confined to the original parties concerned in the transaction. In the case before us we have a third party seeking damages by reason of the willful and fraudulent act of the defendant. The right of recovery under conditions similar to those now presented is established in this and other jurisdictions.

In this state the principle is fully recognized in *Brackett* v. *Griswold* (112 N. Y. 454). This was an action brought by one who purchased notes issued by the Iron Mountains Company of Lake Champlain, a corporation, against its directors for alleged fraud and conspiracy to induce the public, by means of false representations as to its financial condition, to purchase its stock and paper. This court held that there was no evidence that the purchaser in making the purchase relied upon any representations made by defendant, but on the contrary it affirmatively appeared that he was at the time wholly ignorant of the alleged fraudulent scheme or of any acts or representations of the defendant or other parties to the alleged conspiracy.

Judge ANDREWS, writing the opinion for the court, said :

" This cause of action was substantially one for fraud and deceit by means of false pretenses, and the right of recovery is governed by the principles applicable to actions of that character.  That this is the nature of the action was decided in the case of *Arthur* v. *Griswold* (55 N. Y. 400), which was also an action against the present defendant and others, the complaint in which set forth a cause of action similar to that alleged in the third count of the complaint in this action. The allegation that there was a conspiracy to commit the fraud does not affect the substantial ground of action.  The *gravamen* is fraud and damage and not the conspiracy.  The means by which a fraud is accomplished are immaterial except so far as they tend, in connection with the damage suffered, to show an actionable injury.  *  *  *  The question in this case turns upon the point whether the evidence proved or tended to prove a cause of action against the defendant for false and fraudulent representations within the rules governing the common-law action for fraud and deceit.  There is no doubt or question as to what elements are requisite to sustain an action for false pretenses.  The essential constituents of such an action have been understood from the time such actions were first maintained.  They are tersely stated by Church, Ch. J., in *Arthur* v. *Griswold* (*supra*), viz. : ' Representation, falsity, scienter, deception and injury.'  There must have been a false representation, known to be such, made by the defendant, calculated and intended to influence the plaintiff, and which came to his knowledge, and in reliance upon which he, in good faith, parted with property or incurred the obligation which occasioned the injury of which he complains. All of these circumstances must be found to exist, and the absence of any of them is fatal to a recovery.  It is not necessary that the false representation should have been made by the defendant personally.  If he authorized and caused it to be made it is the same as though he made it himself.  Nor is it necessary that it should have been made directly to the plaintiff.  If it was made to the public at large for the purpose of influencing the action of any individual who may act

upon it, any person so acting upon it and sustaining injury thereby may maintain an action.   *   *   *   In order to recover in an action for fraud and deceit the fraud and injury must be connected.   The one must bear to the other the relation of cause and effect, not, perhaps, in so close a sequence as in actions on contract.   But, neverless, it must appear in an appreciable sense that the damage flowed from the fraud as the proximate and not the remote cause.   *   *   *   The case of *Peek* v. *Gurney* (L. R., [6 E. & I. Appeals] 377) applies with great stringency the rule that to sustain an action for fraudulent representations, a close relation must be shown between representations and the injury claimed, and, also, that the representations must have been made to influence the conduct of the plaintiff or of a class of persons in which he was included."   In this case the plaintiff succeeded below, but the judgment was reversed in this court for the reason that he failed to bring himself within the rule as stated.   The proof failed but the principle was fully recognized.   ·

While the case just cited is one of false representations, it involves the precise principle invoked in the case before us. The charge is that the defendant and others made false and fraudulent representations that induced this plaintiff, as one of the general public, to purchase its stock and paper.   In other words, it holds that a person guilty of the fraud is liable even to third parties if they have relied and acted upon it. In the case cited we have the charge of affirmative false representations.   In the case at bar we have not only fraudulent deceit and concealment, but what amounts to an affirmative representation that the tongue of the roller was sound, as the manufacturer by filling the defect with putty and painting the entire surface so that the eye could not detect any weakness by reason of the knot, knothole filled up, the kind of wood employed and the fact that it was cross-grained, must be held to have represented that the roller as offered for sale was in a perfectly marketable condition.

In *Heizer* v. *Kingsland & Douglass Mfg. Co.* (15 L. R. A. · 821) it was held by the Supreme Court of Missouri that the

explosion of the cylinder of a threshing machine, by which
a person engaged in operating it is injured, will not render
the manufacturer liable in the absence of any privity of
contract between them, unless the manufacturer knew the
machine was defective, although he was guilty of negligence
in manufacturing and testing the machine.   BLACK, J., writ-
ing for the court, said: "The distinction between negli-
gence and intentional wrong is important in tracing down
liability for the consequences arising therefrom.   This dis-
tinction is pointed out with clearness in an article in 16
Am. & Eng. Ency. of Law, pages 392 and 434.   Had the
defendant sold this machine to Ellis, knowing that the cylin-
der was defective, and for that reason dangerous, without
informing him of the defect, then the defendant would be
liable even to third persons, not themselves in fault.   *  *  *
As said in *Wellington* v. *Downer Kerosene Oil Co.* (104
Mass. 64): ' It is well settled that a man who delivers an
article which he knows to be dangerous or noxious to another
person, without notice of its nature and qualities, is liable for
any injury which may reasonably be contemplated as likely
to result, and which does in fact result therefrom, to that
person or any other who is not himself in fault.' "   The learned
judge then stated in substance that the defendant, in the
case under consideration, was not proved to have any knowl-
edge of the dangerous condition of the cylinder, and that
the plaintiff's case tended to show nothing more than
negligence.

In the case of *Wellington* v. *Downer Kerosene Oil Co.
supra*) it was held that a declaration that the Downer Kerosene
Oil Company, knowing one Chase to be retailer of fluids to be
burned in lamps for illuminating purposes, and naphtha to
be explosive and dangerous to life for such a use, sold and
delivered naphtha to him, knowing that it was his intention
to retail it in his business ; that in ignorance of its dangerous
properties he retailed a pint of it to the plaintiff Wellington
to be burned in his lamp for illumination, and that while the
plaintiff, in like ignorance, was so burning it, it exploded and

injured him and his property, sets forth a good cause of action at common law.

In *Lechman* v. *Hooper* (52 N. J. Law, 253) the defendant, a mason, had erected a building as a contractor, and one wall was in a dangerous condition; the defendant had full knowledge of the fact. The plaintiff, who had entered the building engaged in another branch of work entirely distinct from that of the mason, was injured by a portion of the wall falling upon him. The defendant was held liable. Chief Justice BEASLEY said, in the course of his opinion: "The defendant had erected this wall, and, therefore, the law imposed on him the duty to put it in a safe condition, or to give warning of its unsafe condition, and this was a duty he owed to each individual person who should lawfully come upon the premises."

In *Lewis* v. *Terry* (111 Cal. 39) the defendant was sought to be charged for having placed upon the market a folding bed that was so imperfectly constructed, a fact well known to the defendant, that at times when any weight was placed on the bed the heavy upright frame would be precipitated with such force upon the lower portion as to wound and even kill a person lying thereon. The defendant was held liable, and the court said that the fact "that such articles are in general not dangerous would seem to enhance the wrong of representing one to be safe for use when known to be really unsafe, for the danger is thus rendered more insidious."

In *Woodward* v. *Miller* (119 Ga. 618) the Supreme Court of Georgia dealt with this same question as late as March, 1904. The head note reads: "The manufacturer of a buggy, who sells it to a municipal corporation for the use of one of its employees, representing it to be strong and in good condition, but knowing that it is in fact defective, the defect being so concealed by the use of paint and grease that the purchaser cannot detect it, is liable in damages to the person whose use of the buggy was contemplated at the time of the sale, for injuries caused by such defect; and this is so notwithstanding there was no privity of

contract between the plaintiff and the defendant in the sale of the buggy."

In *Derry* v. *Flitner* (118 Mass. 131), MORTON, J., said (p. 133): "The rule is well settled and is constantly applied in this Commonwealth, that one who commits a tortious act is liable for any injury which is the natural and probable consequence of his misconduct. He is liable not only for those injuries which are caused directly and immediately by his act, but also for such consequential injuries as, according to the common experience of men, are likely to result from his act. And he is not exonerated from liability by the fact that intervening events or agencies contribute to the injury. * * * (*Hoadley* v. *Northern Transportation Co.*, 115 Mass. 304; *Metallic Compression Casting Co.* v. *Fitchburg Railroad Co.*, 109 Mass. 277; *Salisbury* v. *Herchenroder*, 106 Mass. 458; *Wellington* v. *Downer Kerosene Oil Co.*, 104 Mass. 64; *Carter* v. *Towne*, 98 Mass. 567; *McDonald* v. *Snelling*, 14 Allen [96 Mass.], 290.)"

The cases establish the legal principle that one who sells an article knowing it to be dangerous by reason of concealed defects is guilty of a wrong, without regard to the contract, and is liable in damages to any person, including one not in privity of contract with him, who suffers an injury by reason of his willful and fraudulent deceit and concealment.

The judgment of the trial court and of the Appellate Division should be reversed and a new trial ordered, with costs to the plaintiff in all the courts, to abide the event.

VANN, J. One who carelessly labels a deadly poison as a harmless medicine and puts it on the market in that condition is liable to any person who without notice of its dangerous character uses the same to his injury. (*Thomas* v. *Winchester*, 6 N. Y. 397.) The manufacturer of a machine not inherently dangerous to human life, but with a defect therein which he pointed out to one who purchased it for his own use and at his request attempted to remedy the defect and then painted it over, is not liable to one who was injured while

using the same with the consent of the purchaser. (*Loop* v. *Litchfield,* 42 N. Y. 351.)

The first case is typical of those which permit the user of a machine, appliance or article that is inherently dangerous to recover damages from the maker for injuries sustained without notice, and the second of those which deny relief when the machine is not inherently dangerous to human life.

We now have.a case before us with a new element, that of deceit on the part of the manufacturer, who intentionally so concealed a defect in a machine not intrinsically dangerous as to thereby make it dangerous and without notice sold it to one, who, as he knew, intended to sell it to any purchaser he could find. The deceit, as the jury might have found, consisted in the complete concealment of a defect, not necessarily dangerous if unconcealed but dangerous when concealed, and putting the implement in this condition on the market, without notice to any one, with the intention that it should be sold and used as a safe implement. The natural result of this conduct was to injure whoever might use the implement, whether he was the original purchaser, or any subsequent purchaser, or one who simply used it with the consent of the owner.

A manufacturer has the right to sell a defective machine, if he gives notice of the defect to the purchaser, who in turn has the same right. Neither has the right, however, with furtive intent, to completely conceal the defect and sell the machine as sound and safe, intending it to be used as such by any one into whose possession it might lawfully come, when the natural result would be the infliction of an injury upon any person who used it. By giving currency to the implement as safe, with the intent to deceive not only the purchaser but any user, and yet so covering up the defect as to entirely conceal it, the defendant was guilty of an actionable wrong, as the jury might have found. While the machine was not inherently dangerous, that fact is not controlling, for the danger was in the concealed defect in an implement sold as sound, and which not only appeared to be sound, but the

maker caused it to so appear with intent to deceive. It would be illogical to hold the maker of a poisonous medicine, who negligently but unintentionally labeled it as an innocent remedy and sold it, liable to any one who used it without notice of its character, but not to hold him liable if he intentionally created a danger in a machine apparently safe, which might be as fatal as poison, and, after concealing it in such a way as to prevent detection, put it on the market. While the danger in the one case is not so great as in the other, still if the natural result would cause bodily harm to a human being, that regard for the safety of life and limb which the common law is so careful to shield, should hold the wrongdoer liable in both. A land roller is an implement not ordinarily dangerous, but one with a defective tongue, when the defect is throughly concealed for the purpose of making a better sale, may turn out to be as dangerous as a cartridge loaded with dynamite instead of gunpowder Liability in this case rests on the simple extension of the well-established principle that the maker of an article inherently dangerous but apparently safe, who puts it on the market without notice, is liable to one injured while using it, to the maker of an article, not inherently dangerous, who made it dangerous by his own act but so concealed the danger that it could not be discovered and put it on the market to be sold and used as safe. The extension is logical and consistent with the authorities, for if the implement is not inherently dangerous, but the use thereof is made dangerous by a defect wrongfully concealed, the result is the same and the motive worse. I concur for reversal.

CULLEN, Ch. J., HAIGHT and WERNER, JJ., concur, and GRAY, J., concurs with BARTLETT, J., only; O'BRIEN, J., absent.

Judgment reversed, etc.