Gail E. Young, Individually and as Administratrix of the Estate of John A. Young, Deceased, Appellant-Respondent, v Robertshaw Controls Company, Uni-Line Division, Respondent-Appellant, et al., Defendants. (And Two Third-Party Actions.)

Third Department, November 15, 1984

APPEARANCES OF COUNSEL

*DeGraff, Foy, Conway, Holt-Harris & Mealey* (*Frederick C. Riester* and *F. Douglas Novotny* of counsel), for appellant-respondent.

*Fischer, Hughes, Bessette & Edwards* (*Henry A. Fischer* of counsel), for respondent-appellant.

## OPINION OF THE COURT

YESAWICH, JR., J.

The lawsuit underlying these appeals has its origin in a 1977 explosion of a propane gas water heater which resulted in the death of John Young, plaintiff's deceased spouse. It is alleged the explosion was occasioned by a defective control valve manufactured by defendant Robertshaw Controls Company (hereinafter defendant) and that despite knowledge of the product's defectiveness, defendant failed to recall the valves or to adequately warn dealers and the public of the danger. It is contended further that defendant withheld facts about the peril

from consumers and additionally misled the Consumer Products Safety Commission (CPSC) regarding the extent of the risk. In August of 1979, plaintiff commenced this action against defendant and various codefendants. The complaint, as amended, asserts theories of negligence, breach of warranty, strict products liability and fraud. Compensatory damages for decedent's conscious pain and suffering and wrongful death are sought. Plaintiff in her individual capacity seeks both compensatory and punitive damages for personal injuries allegedly sustained, and for loss of consortium.

Defendant appeals from two orders of Special Term. By order entered December 7, 1983, plaintiff was permitted to amend her complaint to add seven causes of action. As administratrix, plaintiff was given leave to plead causes of action for conscious pain and suffering and wrongful death predicated on fraud. Individually, she was allowed to allege a fraud-based cause of action for loss of consortium between the date of the accident and decedent's death, as well as four separate causes of action for personal injury and property damage grounded in negligence, breach of warranty, strict tort liability and fraud. Additionally, plaintiff was accorded the right to assert a prayer for punitive damages in the five individual causes of action advanced by her.

The second order entered on December 7, 1983 enabled plaintiff, individually, to further amend the complaint to add a claim for punitive damages for loss of consortium in the seventh, eighth and ninth causes of action wherein defendant was charged with bringing about decedent's death through negligence, breach of warranty and strict tort liability, and further denied defendant's cross motion for reargument.

Defendant's threshold objection to both of these orders is that the proposed amendments are patently insufficient on their face because, as a matter of law, a fraud cause of action is not cognizable and punitive damages are unavailable in a derivative action for loss of consortium. The essential elements of a cause of action for fraud are the intentional misrepresentation of a material fact, reliance thereon and an injury resulting from the misrepresentation (*Channel Master Corp. v Aluminum Ltd. Sales,* 4 NY2d 403, 407). Where representations are made to the public at large for the purpose of influencing the action of anyone who may act upon those representations, a common-law cause of action for fraud lies in favor of any individual who acts upon them and is injured thereby (*Kuelling v Lean Mfg. Co.,* 183 NY 78, 85-86).

In this instance, the complaint charges, and documentary evidence tendered by plaintiff indicates, that for a number of years prior to decedent's death, defendant was aware its control valve was defective and represented a real danger to the public (there had apparently been more than 100 accidents resulting in 32 deaths and 77 injuries), yet it did not recall the controls nor attempt to alert the public to the risk, but embarked instead upon an affirmative course of conduct designed and calculated to conceal the problems with the control. Allegedly this concealment, which continued for several years after decedent's death, was undertaken with the intention of deceiving the public at large as to the continued fitness for use of this control valve which defendant had placed in commerce and minimizing recoveries in lawsuits generated by the faulty control. Although generally nondisclosure or concealment alone does not equate to actionable fraud (*Simcuski v Saeli,* 44 NY2d 442, 452; *Moser v Spizzirro,* 31 AD2d 537, affd 25 NY2d 941), it is a principle of long standing that "one who sells an article knowing it to be dangerous by reason of concealed defects is guilty of a wrong, without regard to the contract, and is liable in damages to any person, including one not in privity of contract with him, who suffers an injury by reason of his willful and fraudulent deceit and concealment" (*Kuelling v Lean Mfg. Co., supra,* p 89).

As recently noted in *Cover v Cohen* (61 NY2d 261), this duty to warn of defects is a continuing one, hence:

"A manufacturer or retailer may * * * incur liability for failing to warn concerning dangers in the use of a product which come to his attention after manufacture or sale, through advancements in the state of the art, with which he is expected to stay abreast, or through being made aware of later accidents involving dangers in the product of which warning should be given to users * * *

"Although a product be reasonably safe when manufactured and sold and involve no then known risks of which warning need be given, risks thereafter revealed by user operation and brought to the attention of the manufacturer or vendor may impose upon one or both a duty to warn" (*supra,* pp 274-275).

The reasonableness of a manufacturer's response to evidence that its product is potentially dangerous is generally for the trier of fact to assess (*supra,* pp 276-277). Having declared that defendant was engaged in an intentional and ongoing scheme to conceal the harm posed by its flawed controls, plaintiff stated a cause of action for fraud (see *Butcher v Robertshaw Controls Co.,* 550 F Supp 692). To the extent Special Term's order of December 7, 1983 recognizes that a common-law action for fraud has been

set forth, it is affirmed. Whether, as alleged, a causal connection exists between the avowed misrepresentations and the injuries suffered need not be resolved at this, a pleading stage of the proceeding.

■ With respect to whether it was proper to authorize plaintiff in her various loss of consortium causes of action to maintain punitive damage claims, we note that it is well established that a spouse's action for loss of consortium is derivative, and not independent, of the injured spouse's claim; since at common law a decedent had no cause of action to recover for his death, his spouse had no derivative right to recover for loss of consortium due to that death (*Liff v Schildkrout,* 49 NY2d 622, 632-633; *Osborn v Kelley,* 61 AD2d 367, 370). The Legislature, in enacting the wrongful death statute, limited recovery to compensation for pecuniary injuries; being in derogation of the common law, the statute is strictly construed (see Memorandum of Law Revision Commission, NY Legis Doc, 1982, No. 65 [G], McKinney's Session Laws of NY, 1982, p 2415). Because at the time of decedent's death herein punitive damages were unavailable in a wrongful death action, it necessarily follows that such damages are inaccessible to the widow, whose rights derive from those of her deceased spouse. Similar reasoning compels the conclusion that punitive damages are unavailable to plaintiff for loss of consortium between the date of the accident and decedent's death. Though the action by decedent's estate for conscious pain and suffering survives, by statute a punitive damage award is proscribed (EPTL 11-3.2). Inasmuch as punitive damages are unattainable in the direct action, they are likewise unobtainable in plaintiff's individual claim for consortium, which is interconnected with and stems from the direct action (see *Maidman v Stagg,* 82 AD2d 299, 305).

■ We decline plaintiff's invitation to apply the law of the State of Delaware or the State of Maryland in determining plaintiff's right to recover punitive damages for her loss of consortium. The choice of law issue was not even argued at or commented upon by Special Term. Furthermore, the record on this issue is so sparsely developed that informed review is virtually impossible.

■ Equally unconvincing is the contention that plaintiff's delay in moving to amend her complaint is so egregious that amendment should not be countenanced. Indisputably, judicial discretion is generally exercised more cautiously where a statement of readiness has been filed (*Smith v Sarkisian,* 63 AD2d 780, affd 47 NY2d 878). Here, however, the filing of a tentative

note of issue at an early stage in the litigation, well before completion of the discovery process, was consented to by Special Term; hence the filing thereof could not impair plaintiff's freely permitted right to amend (CPLR 3025, subd [b]). Nor is the extent of the delay an impediment, for defendant does not aver that it has experienced any real prejudice as a consequence. The proposed amendments simply added new theories of recovery (*Goldstein v Brogan Cadillac Oldsmobile Corp.*, 90 AD2d 512, 513; *Murphy v General Motors Corp.*, 55 AD2d 486, 489) premised on information obtained from defendant through discovery.

By her appeal, plaintiff challenges three orders. The first, entered May 25, 1983, refused to grant plaintiff reargument and renewal of a prior order which had denied plaintiff the opportunity to depose two additional employees of defendant. This order also rejected plaintiff's motion to strike defendant's answer, but directed it to produce for *in camera* inspection the so-called "Atherholt chronology", a compilation of documentary information prepared for defendant's general counsel to enable him to determine what should be reported to the CPSC, and to which defendant maintains the attorney-client privilege attaches.

Following an *in camera* review of the Atherholt chronology, Special Term concluded that the privilege issue could not be resolved without extensive hearings and still further delay of this already impeded trial (it had been on the Trial Calendar since January, 1982) for an unconscionable period of time, and that as much of the Atherholt chronology had been made available through prior disclosure and depositions, what was being requested was essentially a fishing expedition. In an order entered August 29, 1983, Special Term denied plaintiff's motion to reargue and renew that determination.

In December of 1983, plaintiff's motion to amend her complaint to add seven new causes of action was granted; the propriety of that decision has already been reviewed. Based solely on the allowance of that amendment, plaintiff reasserted her request to depose defendant's employees and to discover the Atherholt chronology. That request was denied without prejudice to application upon appropriate papers subsequent to appellate review of the December 7, 1983 order granting plaintiff's motion to amend her complaint. The order of April 21, 1984 entered thereon constitutes the third order appealed by plaintiff. Given the trial court's broad discretion in supervising and determining the scope of discovery (*Mamunes v Szczepanski,* 70 AD2d 684, 685; *Borden v Ellis Hosp.,* 67 AD2d 1038), we are unable to conclude on this record that Special Term acted other than prudently in disposing of these largely repetitious motions.

LEVINE, J. (dissenting in part and concurring in part). I am unable to agree with the majority's approval of the proposed amendment's fraud causes of action. Examination of plaintiff's fraud claims clearly reveals that they are grounded essentially on two charges of malfeasance or nonfeasance by defendant Robertshaw Controls Company; namely (1) its failure to warn purchasers or consumers after discovering the dangerously defective nature of the control valve, and (2) its misrepresentations and nondisclosure concerning the defective device and reports to the Federal Consumer Products Safety Commission (CPSC).

As to the first of these bases for plaintiff's fraud causes of action, the proposed pleading and supporting papers are equally clear in indicating that defendant's actual discovery of the dangerous defect occurred *after* the device in question was manufactured and sold. The fact that the intentional concealment and nondisclosure did not occur until subsequent to the sale of the product is, in my view, fatal to plaintiff's fraud actions. This fact distinguishes the instant case from *Kuelling v Lean Mfg. Co.* (183 NY 78), cited by the majority. Modern authorities on tort law continue to hinge actions in fraud, based upon nondisclosure or concealment, on misconduct occurring before or during the course of the transaction in which the injured party was induced to rely on the nonexistence of the undisclosed fact (Prosser & Keeton, Torts [5th ed], § 106, pp 736-740; 1 Harper and James, Torts, § 7.14, pp 586-589; Restatement, Torts 2d, §§ 550-551, pp 118-126). Obviously, the necessary element of detrimental reliance in a fraud action cannot be established when the nondisclosure or concealment does not take place until subsequent to the transaction out of which the claim arises. The majority's extension of liability in fraud for subsequent nondisclosure in effect merges liability in fraud with the currently developing theory of a manufacturer's negligence or strict products liability for failure to warn of defects discovered subsequent to sale (*Cover v Cohen*, 61 NY2d 261, 275). At least one of the dangers in this conceptual confusion of two distinctly different doctrines serving different purposes and having different elements is that on a fraud theory, the risk/burden analysis required in product liability tort law is obviated (see *supra,* p 276).

Turning to plaintiff's only alternative factual ground pleaded in the fraud actions, based upon misrepresentations and nondisclosure to the CPSC, I am equally unable to find a basis for liability. Here, plaintiff and Special Term relied on the authority of *Butcher v Robertshaw Controls Co.* (550 F Supp 692). The

court in *Butcher* posited fraud liability on a theory that "an agency relationship exists, *as a creature of statute,* between the CPSC and members of the consuming public so as to permit the maintenance of an action for fraud and deceit by consumers injured by such fraud and deceit allegedly practiced on the Commission" (*supra,* p 703; emphasis added). Nowhere in the governing statute (US Code, tit 15, §§ 2051-2083) is any such agency relationship expressly created, however. To imply such a relationship in order to satisfy the necessary element of a consumer's fraud action arising out of a fraud practiced against the CPSC is therefore really nothing more than to create a general private right of action for a violation of the disclosure requirements of the Federal statute. Recognition of a private right of action for violation of a Federal statute turns on a question of Congressional intent (*Touche Ross & Co. v Redington,* 442 US 560, 575). I am fully persuaded that, by the same reasoning applied in *Riegel Textile Corp. v Celanese Corp.* (649 F2d 894), no general private right of action was intended with respect to a violation of the disclosure requirements of the Federal act. It is especially significant that Congress expressly included various civil remedies for private litigants with respect to other violations of the statutory scheme (see, e.g., US Code, tit 15, §§ 2072, 2073), but omitted to provide one for that which is at issue here (see *Drinkhouse v Parka Corp.,* 3 NY2d 82, 88).

Accordingly, I would additionally modify the order entered December 7, 1983 by striking the portion thereof which granted plaintiff leave to add fraud causes of action to the complaint.

KANE, J. P., CASEY and WEISS, JJ., concur with YESAWICH, JR., J.; LEVINE, J., dissents in part and concurs in part in an opinion.

Orders entered May 25, 1983, August 29, 1983 and April 26, 1984, affirmed, without costs.

Orders entered December 7, 1983 modified; on the law, by reversing so much thereof as granted plaintiff the right to seek punitive damages for loss of consortium, and, as so modified, affirmed, without costs.