OPINION OF THE COURT
Charles Edward Ramos, J.
*417 The motions pending before this court are hereby consolidated for purposes of disposition.[1]
These are five purported class actions brought by plaintiffs whom the defendants allegedly induced by fraudulent means to become cigarette smokers. They seek to recover monies spent to purchase cigarettes. In each action, defendants move to dismiss the complaint on all or one of the following grounds: lack of personal jurisdiction over certain parent and holding companies of the cigarette manufacturers; lack of subject matter jurisdiction over claims preempted by the Federal Cigarette Labeling and Advertising Act (15 USC § 1331 et seq. [Labeling Act]); and failure to state a claim and to plead fraud and deception with particularity required under CPLR 3016 (b).
I
Introduction
Plaintiffs are residents of the State of New York who purchased cigarettes manufactured, promoted, and sold by the defendants. They sue the five major American cigarette manufacturers (collectively the manufacturing defendants) which are Philip Morris, Inc. (Philip Morris), Brown & Williamson Tobacco Corp. (Brown & Williamson), American Tobacco Co., Inc. (American Tobacco), R.J. Reynolds Tobacco Co. (RJR), and Lorillard Tobacco Co., Inc. (Lorillard); the respective parent holding companies of the manufacturing defendants (the parent company defendants); and two industry trade associations, the Council for Tobacco Research-USA, Inc. (CTR), which was formed by the manufacturing defendants to conduct research involving cigarettes, and the Tobacco Institute, Inc. (TI), to which the manufacturing defendants belong.
Essentially, the amended complaints are identical in that all five allege claims for fraud, fraudulent concealment, violation of General Business Law §§ 349 and 350 (deceptive practices and advertisements), civil conspiracy, concerted action, and aiding and abetting. Plaintiffs contend that for decades *418 defendants manipulated the levels and boosted the effects of nicotine by adding ammonia and other additives to cigarettes. With the intent of influencing consumer smoking patterns, defendants purportedly disseminated misleading information through CTR and TI, and created a false controversy to raise doubts about the cancer causing and the addictive effects of cigarettes. A combination of deceptive practices was allegedly employed by defendants to intentionally addict consumers, particularly adolescents, to cigarettes.
With the exception of B.A.T. Industries, Batus, Inc., and Batus Holdings, Inc., defendants argue that this court lacks subject matter jurisdiction because the Labeling Act preempts all of plaintiffs’ claims which they contend are predicated upon breach of a duty to warn. Defendants also allege that missing from plaintiffs’ fraud and General Business Law §§ 349 and 350 claims are facts demonstrating the element of reasonable reliance. They assert that the hazards of smoking and nicotine’s addictive nature are matters of public knowledge. Thus, even if plaintiffs relied on the advertisements and other public statements, defendants contend that their reliance was unreasonable.
In deciding a motion to dismiss, the court must consider whether there can be fairly gathered from all of the factual allegations a legally cognizable cause of action (Guggenheimer v Ginzburg, 43 NY2d 268, 275; Ackerman v 305 E. 40th Owners Corp., 189 AD2d 665, 666 [1st Dept 1993]). All facts alleged in the pleading must be accepted as true, and the court must accord a plaintiff the benefit of every possible favorable inference. (Ackerman v 305 E. 40th Owners Corp., supra, at 666.) “The motion should be denied if from [the pleading’s] four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law’.” (Supra.) The court’s role is neither to determine the merits of the case, nor to express an opinion as to plaintiffs’ ultimate likelihood of success on the causes of action alleged. (Khan v Newsweek, Inc., 160 AD2d 425, 426 [1st Dept 1990].) Several of the defendants challenge whether personal jurisdiction exists over them. Therefore, before deciding the viability of plaintiffs’ claims, this court will first address the jurisdictional issues, then the remaining arguments in seriatim.
*419 II
Lack of Personal Jurisdiction
B.A.T. Industries P.L.C. (B.A.T.) is a British holding company that owns Batus Holdings, Inc. (Batus Holdings), which in turn owns the shares of Brown & Williamson. Batus, Inc., is a sister holding company of Batus Holdings which was incorporated in Wisconsin and purportedly holds no ownership interest in Brown & Williamson. British-American Tobacco Company Limited is a nonparty subsidiary of B.A.T. and sister company of Brown & Williamson that B.A.T. admits engages in tobacco research and product development (collectively referred to as B.A.T. defendants, unless otherwise indicated).
The B.A.T. defendants assert that because their contacts with the State of New York are insufficient, and they do not manufacture, market, or sell cigarettes, and do not control the activities of Brown & Williamson, personal jurisdiction over them under the long-arm jurisdiction statute is lacking. They further urge this court to follow a number of courts in other jurisdictions which dismissed actions against the B.A.T. defendants based upon proof similar to the proof offered in this case.[2] While these cases are instructive, this court must assess the question of jurisdiction based upon the record before it.
CPLR 302 provides that a court may exercise jurisdiction over a nondomiciliary who in person or through an agent commits a tortious act within or without the State. Based upon the acts of a subsidiary within the State, jurisdiction over a parent company may exist under an alter-ego theory. However, a parent-subsidiary relationship alone cannot form the predicate for jurisdiction over the parent (Heller & Co. v Novacor Chems., 726 F Supp 49, 54 [SD NY 1988], affd 875 F2d 856 [2d Cir 1989]; Porter v LSB Indus., 192 AD2d 205, 213 [4th Dept 1993]). There must be some proof that the parent company dominates or controls the daily activities of the subsidiary. (Delagi v Volkswagenwerk AG, 29 NY2d 426 [1972]; Taca Intl. Airlines v Rolls-Royce of England, 15 NY2d 97 [1965]; Billy v Consolidated Mach. Tool Corp., 51 NY2d 152 [1980].) Although here the record fails to demonstrate that Brown & Williamson’s daily operations are controlled by the B.A.T. defendants, *420 the facts do support allegations of a conspiracy connecting all of the defendants to the transactions occurring in New York.
A conspiracy-based theory of acquiring personal jurisdiction has been recognized as a basis for asserting personal jurisdiction over a nonresident defendant. (See, Travelers Indent. Co. v Inoue, 111 AD2d 686 [1st Dept 1985]; American Broadcasting Cos. v Hernreich, 40 AD2d 800 [1st Dept 1972]; Lamarr v Klein, 35 AD2d 248 [1st Dept 1970], affd 30 NY2d 757 [1972]; Reeves v Phillips, 54 AD2d 854 [1st Dept 1976]; Parke-Bernet Galleries v Franklyn, 26 NY2d 13 [1970]; De Nigris Assocs. v Pacific Air Transp. Intl., 38 AD2d 363 [1st Dept 1972]; also, Prudential Lines v Firemen’s Ins. Co., 91 AD2d 1 [1st Dept 1982]; Ghazoul v International Mgt. Servs., 398 F Supp 307 [1975] [applying New York law].) Courts have held that the tortious acts of a coconspirator committed within the State may be attributed to a nondomiciliary defendant for purposes of obtaining personal jurisdiction. (Reeves v Phillips, 54 AD2d, supra, at 855, citing American Broadcasting Cos. v Hernreich, 40 AD2d 800, supra.) Where some evidentiary facts are produced to support a prima facie case of jurisdiction that is enough to defeat a dismissal motion. (Lamarr v Klein, 35 AD2d 248 [1st Dept 1970], affd 30 NY2d 757 [1972], supra; Benson v Syntex Labs., 161 Misc 2d 822 [Sup Ct, Chautauqua County 1994].)
More than 200 exhibits have been submitted by plaintiffs which demonstrate that the B.A.T. defendants played a significant role in the process that led to the sale of tens of millions of packs of cigarettes in the State of New York annually. Through a coordinated policy on health and smoking, all of B.A.T.’s tobacco operating companies, including Brown & Williamson, purportedly contributed to a group-wide tobacco research and development program. When damaging information on smoking was allegedly detected in the files of Brown & Williamson, these documents were purportedly shipped offshore to B.A.T. or one of its other subsidiaries in England. This was allegedly done to avoid disclosure of damaging information during litigation in the United States. Not only to conceal key information, the B.A.T. organization of subsidiaries was purportedly used to secretly develop a genetically engineered tobacco known as Y-l, which was blended into cigarettes sold in the United States. These allegations are not conclusively refuted by the B.A.T. defendants. Instead, their motion papers acknowledge that the B.A.T. Board of Directors and senior officers established coordinated policies and procedures on tobacco research, marketing and public relations that applied to all B.A.T. subsidiaries.
*421 Whether the exercise of jurisdiction under the conspiracy theory comports with due process requirements depends, as in any case, upon a finding that the defendants have purposefully “availed [themselves] of the privilege of conducting business [in the forum State].” (Burger King Corp. v Rudzewicz, 471 US 462, 475-476 [1985].) Although B.A.T. defendants assert in no more than a footnote that the conspiracy theory of jurisdiction offends the Due Process Clause, there is authority which upholds the exercise of jurisdiction on this theory. (See, Ruiz v American Tobacco Co., 977 F Supp 545 [D Puerto Rico 1997]; Vermont Castings v Evans Prods. Co., 510 F Supp 940 [D Vt 1981]; see also, Peterson v Spartan Indus., 33 NY2d 463 [1974] [where a showing that facts may exist to support jurisdiction was found sufficient to deny a motion to dismiss and to permit discovery]; American Broadcasting Cos. v Hernreich, 40 AD2d 800 [1972], supra [the issue of jurisdiction could not be summarily disposed because the issue was intermingled with the merits of the case]; see also, Reeves v Phillips, 54 AD2d 854 [1st Dept 1976], supra.)
Overall the record contains some facts which support the existence of a conspiracy to deceive the public about the addictive nature of nicotine. The facts also demonstrate that B.A.T., its subsidiaries, including Batus Holdings, were members of a conspiracy, and were aware of the activities in New York. Therefore, at this early stage of the proceeding, the motions to dismiss must be denied without prejudice to the B.A.T. defendants to assert the jurisdictional objections by affirmative defense in their respective answers.
Ill
Preemption
Section 5 (b) of the Labeling Act (15 USC § 1334 [b]) which is captioned “Preemption”, as amended, provides: “No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with [section 4] of this chapter.” The purpose of the Labeling Act was to establish a comprehensive Federal program, and to adequately inform the public of the health hazards of cigarettes, through warning labels, as set forth in section 4 of the Act (15 USC § 1333). The preemptive effect of section 5 (b) was interpreted by the United States Supreme Court in Cipollone v Liggett Group (505 US 504 [1992]). There, *422 plaintiff sued three cigarette manufacturers for common-law damages resulting from the death of a long-time smoker who died of lung cancer. Several theories of liability were alleged, including failure to warn of the health consequences of smoking, fraudulent misrepresentation, and conspiracy to commit fraud. In deciding whether the plaintiffs particular claims were preempted, the Court asked “whether the legal duty that is the predicate of the common-law damages action constitutes a ‘requirement or prohibition based on smoking and health * * * imposed under State law with respect to * * * advertising or promotion’ ”. (Supra, at 524.) Giving the clause “a fair but narrow reading”, the Court held that some of the plaintiffs claims were preempted, while other claims were not because the Labeling Act only preempts those claims that are based upon a duty to warn (Cipollone v Liggett Group, supra, 505 US, at 524).
In the instant cases, defendants argue that plaintiffs’ claims are simply all variations of a failure to warn claim. However, defendants have misconstrued plaintiffs’ claims, and the Court’s holding in Cipollone (supra). According to Cipollone, each claim must be assessed separately to ascertain whether it asserts that cigarette manufacturers’ "advertising or promotions should have included additional, or more clearly stated, warnings[.]” (Supra, at 524.) Claims of fraudulent misrepresentation and conspiracy were not found preempted by the Labeling Act because fraud is not “predicated * * * on a duty ‘based on smoking and health’ but rather on a more general obligation — the duty not to deceive.” (Supra, at 528-529.) The Court added that “[u]nlike state-law obligations concerning the warning necessary to render a product ‘reasonably safe,’ state-law proscriptions on intentional fraud rely only on a single, uniform standard: falsity.” (Supra, at 529.)
Here, plaintiffs’ fraud claims are partially based upon allegedly false statements made by defendants, such as those made before Congress on April 14, 1994, when the chief executive officers of each of the manufacturing defendants testified that nicotine is not addictive.[3] They are also based upon newspaper advertisements published by Philip Morris and RJR. The one advertisement that plaintiffs claim is false states *423 in part: “Philip Morris does not believe cigarette smoking is addictive” and “None of the ingredients added in the manufacture of cigarettes is harmful as used.” (Plaintiffs’ exhibit 70.) The RJR advertisement states in part: “Instead of increasing the nicotine levels in our products, we have in fact worked hard to decrease ‘tar’ and nicotine.” (Plaintiffs’ exhibit 71.) This aspect of plaintiffs’ fraud claim which alleges affirmative misrepresentations is clearly based upon falsity and not upon a duty to warn. Thus, in this regard, it is not preempted by the Federal statute.
Likewise, plaintiffs’ claims based upon conspiracy are not preempted. The Cipollone Court found that “[t]he predicate duty underlying [a conspiracy] claim is a duty not to conspire to commit fraud.” (Supra, at 530.) Since this court has already reasoned that plaintiffs’ fraud by misrepresentation claim survives the preemptive effects of the Labeling Act, the claims of a conspiracy and concerted action “to misrepresent or conceal material facts concerning the health hazards of smoking” are not based upon a duty to warn and therefore are not preempted by the Federal statute. (Supra.)
Although Cipollone (supra) did not involve claims under a consumer protection statute, several other courts have found that claims based upon these statutes are likewise not preempted. For instance, the courts in Mangini v R.J. Reynolds Tobacco Co. (7 Cal 4th 1057, 875 P2d 73 [1994]) and in Castaño v American Tobacco Co. (870 F Supp 1425 [ED La 1994]) addressed whether a claim under their respective consumer protection statutes was preempted. In Mangini, the court determined that the predicate underlying plaintiffs’ consumer protection statute claim was the duty “to not engage in unfair competition by advertising [cigarettes to minors] or encouraging others to violate the law.” (7 Cal 4th, at 1068, 875 P2d, at 80.) Following the Court’s analysis in Cipollone, the Mangini court found that the phrase “ ‘based on smoking and health’ ”, as stated in the Labeling Act, did not encompass the more general duty not to unfairly assist or advertise illegal conduct. (Supra.) Likewise, in Castano v American Tobacco (supra) the Federal court held that the duty imposed under its consumer protection statute is much broader than a duty “based on smoking and health”. (Supra, at 1433.)
A similar finding must be reached under General Business Law §§ 349 and 350. Because General Business Law § 349 *424 is intended to prohibit all deceptive acts and practices, and its counterpart, General Business Law § 350, is aimed against false advertising, these claims are not predicated on a duty to warn, but upon a duty not to deceive or to make false statements. (Mem of Assembly in support, Bill Jacket, L 1980, ch 346.) Therefore, this court finds that plaintiffs’ General Business Law §§ 349 and 350 claims are not preempted by the Federal Labeling Act.
As for contentions that plaintiffs’ fraudulent concealment claim is dependent upon a duty to disclose, and thus preempted by the Labeling Act, this court finds that these contentions are inadequate to warrant a dismissal of plaintiffs’ claims. In Cipollone (supra) the Supreme Court stated that the claim for failure to warn is preempted if the claim is based upon the inadequacy of the warning with respect to smoking and health, or requires a showing that additional information should have been included in the manufacturer’s advertising or promotions of cigarettes. (505 US, at 524.) Although New York law generally requires proof of a duty to disclose to sustain a fraudulent concealment or suppression claim (Swersky v Dreyer & Traub, 219 AD2d 321, 326 [1st Dept 1996]), such a showing is not required where “in addition to nondisclosure of material facts, [one] uses artifice, wiles, or deceptive conduct designed to throw the other party off his guard and lull him into a false sense of security.” (60 NY Jur 2d, Fraud and Deceit, § 90; Amend v Hurley, 293 NY 587 [1944]; Moser v Spizzirro, 31 AD2d 537 [2d Dept 1968], affd 25 NY2d 941; Perin v Mardine Realty Co., 5 AD2d 685 [2d Dept 1957], affd 6 NY2d 920.) Here, if a duty to disclose, or to warn is found not an essential element of plaintiffs’ fraudulent concealment claim, then the claim would not be preempted because plaintiffs would not have to challenge the adequacy of the warnings on cigarette packages.
Even if these claims require proof of a duty to disclose, the duty does not arise from any information missing in defendants’ advertising or promotion, and, therefore, preemption does not automatically attach. The common thread running through the authorities cited above is that any affirmative steps taken by the defendants, such as might mislead the public regarding the consequences of smoking (making public statements, revealing that they are conducting research, etc.), triggers potential liability. If the defendants did nothing but engage in garden variety advertising and promotion, the labeling statute might indeed grant them immunity from, suit because absent affirmative steps, no further obligation to dis *425 close could be imposed. However, they have repeatedly made affirmative statements that go beyond mere advertising and promotion which alone can sustain a finding that a duty not to conceal has arisen. Thus, this court cannot find that plaintiffs’ fraudulent concealment claims are preempted as a matter of law.
IV
Fraud and CPLR 3016 (b)
Fraud is defined broadly to include any cunning, deception, or artifice employed by one person to deceive or gain an unfair advantage to the detriment of another. (Matter of Cowles v Board of Regents, 266 App Div 629, 633 [3d Dept 1943].) It is well settled that the elements of a common-law claim for fraud are: a representation or omission of a material fact, falsity, sci-enter, deception, and injury. (60 NY Jur 2d, Fraud and Deceit, § 11.) Fraud may be committed by suppression of the truth as well as by a misrepresentation. (Kuelling v Lean Mfg. Co., 183 NY 78 [1905]; Lukowsky v Shalit, 110 AD2d 563 [1st Dept 1985].) Allegations of a conspiracy or an agreement to commit an underlying wrong or fraudulent act merely “connect [s] non-actors, who might otherwise escape liability, with the acts of their coconspirators.” (Burns Jackson Miller Summit & Spitzer v Lindner, 88 AD2d 50, 72 [2d Dept 1982], affd 59 NY2d 314 [1983]; Reo v Shudt, 144 AD2d 793, 794 [3d Dept 1988].)
CPLR 3016 (b) requires that to plead an action for fraud the circumstances constituting the wrong must be stated in detail. Sufficient detail of the misconduct must be stated in order to clearly inform a defendant with respect to the incidents complained of. (Foley v D’Agostino, 21 AD2d 60, 63 [1st Dept 1964].) Yet, the provision is not to be interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be impossible to state in detail the circumstances constituting the wrong. (Lanzi v Brooks, 43 NY2d 778, 779 [1977]; P.S. Auctions v Exchange Mut. Ins. Co., 105 AD2d 473 [3d Dept 1984]; see also, Foley v D’Agostino, supra, 21 AD2d, at 63 [1st Dept 1964].) Here, under the circumstances, this court cannot dismiss the amended complaints at this stage in the proceedings since to do so might prevent otherwise potentially valid causes of action from being brought to trial.[4]
Plaintiffs’ pleadings contain all of the elements necessary to assert a cause of action for both fraud and violation of Gen *426 eral Business Law §§ 349 and 350. Contrary to defendants’ argument that plaintiffs fail to allege facts showing a change in their position in reliance upon their fraudulent acts, affirmative action in reliance on a misrepresentation is not essential to an action for fraud. (Hadden v Consolidated Edison Co., 45 NY2d 466, 470 [1978]; Stern Bros, v New York Edison Co., 251 App Div 379, 381 [1st Dept 1937]; Rothmiller v Stein, 143 NY 581 [1894]; see also, Marbury Mgt. v Kohn, 629 F2d 705 [2d Cir 1980].) Fraud that induces nonaction where action would otherwise have been taken is as culpable as fraud that induces action that would otherwise have been withheld. (Stern Bros. v New York Edison Co., supra, 251 App Div, at 381; Hadden v Consolidated Edison Co., supra, 45 NY2d, at 470.)
In each action, plaintiffs testified during class certification depositions that defendants lied to them and concealed information about the addictive qualities of nicotine, and that if they had known cigarettes were addictive they would not have started smoking or would have quit. Several also testified that they did in fact rely on defendants’ fraudulent statements made at the 1994 congressional hearings and misleading statements made in the 1994 newspaper advertisements that touted the nonaddictive effects of nicotine.[5] Moreover, testimony has been given which demonstrates that plaintiffs relied upon not one statement, omission, or act by defendants, but rather upon a cumulation of fraudulent statements and manipulative practices. (See, Marcus v Jewish Natl. Fund, 158 AD2d 101, 106 [1st Dept 1990].)
The unpersuasive charges by the manufacturing defendants that the amended complaints do not allege the exact time and *427 place of each misrepresentation, by whom and to whom they were made, and the substance of each alleged misrepresentation are not an appropriate basis under the circumstances to dismiss the amended complaints. “Where representations are made to the public at large for the purpose of influencing the action of anyone who may act upon those representations, a common-law cause of action for fraud lies in favor of any individual who acts upon them and is injured thereby”. (Young v Robertshaw Controls Co., 104 AD2d 84, 86, appeal dismissed 64 NY2d 885 [1985], citing Kuelling v Lean Mfg. Co., 183 NY 78, 85-86 [1905], supra; City of New York v Lead Indus. Assn., 190 AD2d 173, 177 [1st Dept 1993], supra; see also, Committee on Children’s Tel. v General Foods Corp., 35 Cal 3d 197, 673 P2d 660 [1983].) Here defendants are accused of much more than making mere misrepresentations to the public. They purportedly used what they knew to be an addictive drug in order to capture sales in the public market. Meanwhile, information was allegedly being concealed and misrepresented so as to continue engaging in their manipulative activities. Under these circumstances, the facts in the amended complaints have been stated “in sufficient detail to inform the defendants of the substance of the claims” (Limmer v Medallion Group, 75 AD2d 299, 302 [1980]), and, therefore, the causes of action for fraud cannot be dismissed.
As for General Business Law §§ 349 and 350 claims, section 349 (a) of the General Business Law declares as unlawful “[deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state”. To state a claim, a plaintiff needs to only show that a defendant has engaged “in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof’. (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25 [1995], citing Varela v Investors Ins. Holding Corp., 81 NY2d 958, 961 [1993]; Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 349, at 565; see also, McGill v General Motors Corp., 231 AD2d 449 [1st Dept 1996].) It is not necessary under the statute to submit proof of a defendant’s intent to defraud, or of a plaintiffs justifiable reliance. (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, supra, at 26.) However, proof that a material deceptive act or practice caused a plaintiff actual, although not necessarily pecuniary, harm is required to impose compensatory damages. (Supra.) In defining “deceptive acts and prac *428 tices”, the Pension Fund Court adopted “an objective definition” to include those acts or practices that are “likely to mislead a reasonable consumer acting reasonably under the circumstances.”[6] (Supra, at 26.) It further held that “[t]he scenario is quite different * * * where the business alone possesses material information that is relevant to the. consumer and fails to provide this information.” (Supra, at 26.)
Applying this test to the present cases, the representations and acts complained of are clearly the kind of “consumer oriented” conduct that falls within the statute. Moreover, the remaining criteria have been satisfied by evidence that supports plaintiffs’ numerous allegations that defendants purposefully manipulated their product to increase the addictive qualities of cigarettes. Whether a “reasonable” consumer would have been misled by defendants’ deceptive practices is a factual issue that must be resolved at trial. As stated in Rogers v R.J. Reynolds Tobacco Co. (557 NE2d 1045, 1054 [Ind 1990]), “[t]here is no basis for * * * judicially noticing what the ordinary consumer’s knowledge concerning the addictive qualities of cigarettes may have been [because] [t]he state of knowledge attributable to the community * * * has changed over time”. Thus, even assuming the addictive nature of nicotine was commonly known, evidence that defendants created a false controversy raises suspicions as to whether the information, although widely known, was commonly accepted. Therefore, it is inconclusive whether a reasonable consumer in plaintiffs’ circumstances might have been misled by the defendants’ conduct.
As to the claims of violation of General Business Law § 350, the amended complaints allege several purportedly false advertisements upon which some of the plaintiffs relied. And, given that “each of the [amended] complaint’s causes of action embraces a forbidden type of deception * * * with sufficient factual specificity * * * so as to identify the transaction and indicate the theory of redress to enable the court to control the *429 matter and the adversary to prepare”, this claim will not be dismissed. (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977], supra, citing Foley v D’Agostino, 21 AD2d 60, 62 [1st Dept 1964], supra.)
Accordingly, the defendants’ motions to dismiss are denied, and the parties are directed to proceed with the completion of discovery.
[Portions of opinion omitted for purposes of publication.]

. This memorandum decision disposes of the motions in the following actions: Hoberman v Brown & Williamson Tobacco Corp. (index No. 110953/ 96 — motion sequence Nos. 003-007); Small v Lorillard Tobacco Co. (index No. 110949/96 — motion sequence Nos. 002-004); Frosina v Philip Morris, Inc. (index No. 110950/96 — motion sequence Nos. 002-004); Zito v American Tobacco Co. (index No. 110952/96 — motion sequence Nos. 001-003); and Hoskins v R.J. Reynolds Tobacco Co. (index No. 110951/96 — motion sequence Nos. 003-005).

. See, Arch v American Tobacco Co. (984 F Supp 830); State v American Tobacco Co. (Fla Cir Ct, Sept. 16, 1996, No. CL 95-14466 AH, appeal noticed Oct. 16, 1996); Smith v Brown & Williamson Tobacco Corp. (1996 WL 751399 [WD Mo, Dec. 19, 1996, Smith, J.]); Perez v Brown & Williamson Tobacco Corp. (SD Tex, Mar. 7, 1997, civ No. C-97-070).

. While defendants argue that their statements are protected as commercial speech, and that the General Business Law provides a complete defense to one who complies with the rules of a Federal statute, in this case the Labeling Act, in either circumstance, untruthful utterances, commercial or otherwise, are never entitled to such protection. (Virginia Pharmacy Bd. v *423 Virginia Consumer Council, 425 US 748 [1976]; see also, the Court’s analysis in Cipollone v Liggett Group, 505 US 504, supra.)

. Although the parent company defendants, TI and CTR argue that the amended complaints fail to allege facts which state a claim against them, ev *426 idence suggests there was an industry-wide conspiracy in which the parent company defendants participated by agreeing to create, fund, and operate CTR and TI. Because of their participation in and concerted action with CTR and TI to disseminate fraudulent information, this court finds that a cause of action exists against them under a conspiracy theory, therefore, their motions to dismiss must be denied. (Compare, City of New York v Lead Indus. Assn., 190 AD2d 173, 178 [1st Dept 1993], citing Farr v Newman, 14 NY2d 183 [1964]; Vandervelde v Put & Call Brokers & Dealers Assn., 344 F Supp 118, 155 [SD NY 1972]; Phelps Dodge Ref. Corp. v Federal Trade Commn., 139 F2d 393, 396-397 [2d Cir 1943] [finding that liability attaches to all those who actively participated in the scheme].)

. Given that this court declines to judicially notice the addictive effects of nicotine as a matter of common knowledge, the issue of whether plaintiffs were reasonable in their reliance is a question of fact which goes to the merits of the claims, and, thus, will not be addressed on the motions to dismiss. (See, infra, at 427; Yuzwak v Dygert, 144 AD2d 938, 940 [4th Dept 1988].)

. Because this court finds that plaintiffs’ allegations are sufficient to satisfy this objective test, it need not consider whether the Court intended Pension Fund (supra) to overturn its holding in Guggenheimer v Ginzburg (43 NY2d 268 [1977], supra). In interpreting General Business Law and New York City’s deceptive practices statute, the Guggenheimer Court found that “[i]n weighing a statement’s capacity, tendency or effect in deceiving or misleading customers, we do not look to the average customer but to the vast multitude which the statutes were enacted to safeguard — including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions”. (Supra, at 273.)