■ MAHMOOD KHAN et al., Respondents, v NEWSWEEK, INC., Appellant.—Order, Supreme Court, New York County (Irma Vidal Santaella, J.), entered July 21, 1988, which denied defendant's motion to dismiss the amended complaint for failure to state a cause of action (CPLR 3211 [a] [7]) or, alternatively, to dismiss the action as barred by the First and Fourteenth Amendments of the US Constitution and article I, § 8 of the NY Constitution, is affirmed, without costs.

This is an action for libel brought by a Pakistani businessman and a corporation of which he is the principal shareholder, Wardug Tyre Company, Ltd., against Newsweek, Inc., based on an article appearing in the October 10, 1983 international edition of Newsweek magazine. The cover of this issue featured a headline reading, "The Secret Warriors" with a subtitle, "The CIA Is Back in Business". The inside article is entitled "The Afghan Connection", and the offending material reads as follows: "Recently, a Pakistani businessman who had long lived in the United States started building a tire factory in Peshawar. But Pakistani police discovered that some of the crates of 'equipment' delivered to the factory contained arms. The businessman was arrested, released and has faded from view. Many Pakistani industrialists do not think he would have embarked on such a major investment as a free-lance arms merchant: the CIA, they point out, was probably a silent partner."

That it is the individual plaintiff who is referred to in this paragraph is not disputed by defendant and, indeed, there is apparently no question that plaintiff Khan would be readily identifiable in Pakistan as the Pakistani businessman referred to.

The dissent concludes (at 428) that the language in question was "obviously not meant to be abusive of the plaintiff" and that "[t]o be a 'free-lance arms merchant' is not necessarily to be in the export trade or smuggling." At issue in this appeal, however, is the very narrow determination of whether the complaint is insufficient as a matter of law. On this record, we cannot reach such a conclusion.

A motion to dismiss for failure to state a cause of action assumes the truth of the material allegations and everything reasonably to be implied therefrom. *(See, Foley v D'Agostino,* 21 AD2d 60, 65.)* In determining such a motion, it is not the function of the court to evaluate the merits of the case *(Carbillano v Ross,* 108 AD2d 776, 777) or express an opinion as to plaintiff's ability to ultimately establish the truth of the averments. *(219 Broadway Corp. v Alexander's, Inc.,* 46 NY2d 506, 509.)* Rather, the plaintiff must be "given the benefit of every possible favorable inference" *(Rovello v Orofino Realty Co.,* 40 NY2d 633, 634) and the motion to dismiss will fail if, "from [the pleading's] four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law". *(Guggenheimer v Ginzburg,* 43 NY2d 268, 275.)*

Upon applying these principles to the facts before us, we conclude that the statements at issue are "reasonably susceptible of a defamatory connotation" *(James v Gannett Co.,* 40 NY2d 415, 419), particularly when considered, as they must be, in context, and when the language is given the requisite "natural reading", i.e., not read "as mildly as possible at one extreme, or to find defamatory innuendo at the other". *(Weiner v Doubleday & Co.,* 74 NY2d 586, 592.)* Concur—Asch, Kassal, Ellerin and Wallach, JJ.

Kupferman, J. P., dissents in a memorandum as follows: Newsweek magazine, in October 1983, published an article entitled "The Afghan Connection". Under the illustration for the article is the descriptive phrase "Rebels in the Afghan hills: Arms and ammunition courtesy of the C.I.A.?"

Several parts of the article are italicized as is the one specifically complained of, which reads as follows: "Recently, a Pakistani businessman who had long lived in the United States started building a tire factory in Peshawar. But Pakistani police discovered that some of the crates of 'equipment' delivered to the factory contained arms. The businessman was arrested, released and has faded from view. Many Pakistani industrialists do not think he would have embarked on such a major investment as a free-lance arms merchant: the CIA, they point out, was probably a silent partner."

The plaintiffs are a Pakistani businessman and a company building a tire factory in Peshawar of which plaintiff is an executive.

It is contended that the article is false and defamatory in that it refers to the plaintiff as an arms merchant and

smuggler, states he is affiliated with the C.I.A. and that crates of equipment delivered to his factory contained arms.

It is alleged, in two causes of action in the amended complaint, that arms smuggling is a crime in Pakistan interdicted by an export trade control order. It is further postulated that Pakistan is an Islamic State and that the United States Government, of which the C.I.A. is an arm, is considered anti-Islamic by the Pakistani public. Pro C.I.A. activity is considered immoral, causing plaintiff to be "the object of ridicule, scorn and hatred" and to lose employees who fear for their lives. The ad damnum seeks $1 billion for each plaintiff plus $½ billion in punitive damages.

Plaintiffs assert, in opposition to defendant's motion to dismiss, that no crates of arms were found in the factory, but were seized at the Islamabad airport, 100 miles away, consigned to another, and that the individual plaintiff was judicially exonerated. However, this information is beyond the scope of defendant's motion, pursuant to CPLR 3211 (a) (7), which, as the IAS court noted, is addressed to the sufficiency of the complaint and is not one converted to a motion for summary judgment under CPLR 3211 (c) *(see, Rovello v Orofino Realty Co.,* 40 NY2d 633). Moreover, any discrepancy in the article about where the arms were seized is inconsequential since the location of such seizure would have had no material effect upon a reader's ability to assess the import of the article. *(See, Korkala v Norton & Co.,* 618 F Supp 152, 155.)

The complaint is insufficient as a matter of law. The Central Intelligence Agency is a legal arm of the United States Government (50 USC § 403 *et seq.)* and consorting therewith is not a crime. While Islam may "shun" it *(cf., Paul v Watchtower Bible & Tract Socy.,* 819 F2d 875, *cert denied* 484 US 926) (in itself a doubtful proposition), that does not change its lawful character.

The essence of the complaint is the contention that the article alleged a violation of Pakistani laws against gunrunning and smuggling. But, the only law cited is the export control order, which is not mentioned in the article and solely prohibits the export of arms from Pakistan, a charge not made in the complained-of language.

While it cannot be said that the statements with respect thereto are not "reasonably susceptible of a defamatory connotation" *(Weiner v Doubleday & Co.,* 74 NY2d 586, 592), the content of the article is within "the sphere of legitimate

public concern" *(Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199; *see, Weiner v Doubleday & Co., supra),* and, as such, is entitled to great leeway. In such cases, a private figure plaintiff bears the burden of proving that the speech at issue is false before recovering damages for defamation from a media defendant. *(Philadelphia Newspapers v Hepps,* 475 US 767, 777; *see,* Burgess-Jackson, *The Perils of Error Analysis in Defamation Law,* 12 Commun & L No. 1, at 3 [Mar. 1990]; Perle and Williams, Publishing Law Handbook § 3.09 [Prentice Hall Law & Business 1988].)

The language was obviously not meant to be abusive of the plaintiff *(cf., People v Dietze,* 75 NY2d 47). Instead, it was an analysis, somewhat flawed, of a matter of public interest involving Afghan resistance to the Soviet invasion. Pakistani involvement in helping the Afghans and being a center of refuge is a matter of common knowledge and, if anything, approbation. Moreover, the plaintiff businessman is not actually accused in the article. To be a "free-lance arms merchant" is not necessarily to be in the export trade or smuggling.

Accordingly, the order appealed from should be reversed, on the law, and defendant's motion to dismiss the amended complaint for failure to state a cause of action for libel should be granted, without costs.