Rose v American Tobacco Co. (2004 NY Slip Op 50355(U))

[*1]

Rose v American Tobacco Co.

2004 NY Slip Op 50355(U)

Decided on February 20, 2004

Supreme Court, New York County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 20, 2004

Supreme Court, New York County,
 NORMA ROSE and LEONARD ROSE, Plaintiffs,
against
AMERICAN TOBACCO COMPANY, PHILIP MORRIS INCORPORATED, R.J. REYNOLDS TOBACCO COMPANY, and BROWN & WILLIAMSON TOBACCO CORPORATION, Defendants.
Index No. 101996/2002

Charles Edward Ramos, J.
Motion sequence Nos. 004, 005, and 006 are consolidated herein for disposition.
In sequence 004, defendants Philip Morris Incorporated, (Philip Morris), R.J. Reynolds Tobacco Company, (R.J. Reynolds) and Brown & Williamson Tobacco Corporation (Brown & Williamson), move for an order pursuant to CPLR 3212 granting summary judgment and dismissing the fraud, failure to warn and the design defect claims asserted against all defendants and the failure to warn claim asserted against defendant Philip Morris. In sequence 005, defendants Philip Morris, R.J. Reynolds and Brown & Williamson move for summary judgment in their favor and dismissal of the failure to warn, fraudulent concealment, breach of warranty and design defect claims. In sequence 006, defendant Brown & Williamson moves for summary judgment and dismissal of all claims as barred by the applicable statute of limitations, dismissal of the warranty claims, and dismissal of all claims asserted against defendant Brown & Williamson Tobacco Corporation, individually.
In this tobacco products liability action, plaintiffs seek to recover for personal injuries, including lung cancer and permanent neurological damage, allegedly sustained by plaintiff Norma Rose as the result of her use of cigarettes manufactured, advertised and/or sold by defendants [FN1]. Plaintiffs allege that Norma Rose began smoking in the mid-1940s while a teenager and, by the time she was 20 years old, smoked approximately one pack a day. Plaintiffs further alleges that, beginning in the mid-1970s, Norma Rose tried to quit several times, but, because of an addiction to the nicotine in cigarettes, was unsuccessful until February 1993. In March 1995, Norma Rose was diagnosed as suffering from lung cancer and paraneoplastic cerebellar degeneration (PNCD), a neurological condition which sometimes accompanies lung cancer. She was cured of cancer later that same year, but allegedly continues to suffer from PNCD.
Plaintiffs allege that, in the 1950s, Norma Rose smoked Camel cigarettes manufactured by defendant R.J. Reynolds Tobacco Company; in the 1960s, she smoked Pall Mall cigarettes [*2]manufactured by The American Tobacco Co., which later merged into defendant Brown & Williamson; and, in the 1970s, she smoked Merit, Vantage, Parliament and Benson & Hedges cigarettes manufactured by defendant Philip Morris Incorporated. In the 1980s and until she quit smoking in 1993, Norma Rose smoked Benson & Hedges cigarettes.
Plaintiffs also allege that cigarettes are a defective product and are not reasonably safe when used as intended because they are addictive and carcinogenic. Plaintiffs further allege that defendants knew of the health hazards presented by cigarette smoking, yet concealed the extent of these hazards from the public during the decades Norma Rose smoked.
In the second amended verified complaint, plaintiffs assert causes of action against defendants for: failure to warn consumers of the dangers of cigarette smoking prior to 1969; fraud and deceit; negligent misrepresentation; negligent and defective design; strict products liability; breach of express warranty; breach of implied warranty of merchantability; breach of implied warranty of fitness for a particular purpose; and loss of consortium on behalf of plaintiff Leonard Rose.
In three separate motions, one by each of the remaining defendants, defendants seek summary judgment dismissing these claims on a variety of grounds, including failure to demonstrate reasonable reliance on defendants' alleged fraudulent misrepresentations and omissions, and federal preemption of claims accruing after July 1, 1969, the effective date of the Federal Cigarette Labeling and Advertising Act, as amended by the Public Health Cigarette Smoking Act of 1969 (15 USC § 1331, et seq.) (the Labeling Act) which requires that every package of cigarettes sold in the United States bear a warning label and bans cigarette advertisements on electronic communication media. Defendants also contend that the tort claims are time-barred by the three-year statute of limitations for toxic torts (see CPLR 214-c) and that the breach of warranty claims are time-barred by the four-year statutes of limitations (see UCC §§ 2-314, 2-315). In opposition, plaintiffs contend that defendants have misconstrued and mischaracterized the factual allegations and claims asserted and that there exist numerous triable issues sufficient to preclude summary judgment.
On behalf of all defendants, Philip Morris in motion sequence No. 004 and R.J. Reynolds in motion sequence No. 005 contend that summary judgment must be granted in defendants' favor on the first, second and third causes of action which include claims based on theories of failure to warn prior to July 1, 1969, fraudulent concealment, affirmative fraud, and negligent misrepresentation, both before and after the enactment of the Labeling Act in 1969.
In these claims, plaintiffs allege that, from the 1950s through the 1990s, defendants created advertisements, brochures, press releases, reports and other communications through which they negligently and intentionally misrepresented to the public that cigarettes were safe for consumption and did not present a health risk. Plaintiffs further allege that, in communications issued prior to 1969, defendants failed to warn of health risks known to them and fraudulently concealed and suppressed material facts, including that cigarettes are addictive and carcinogenic and that defendants had manipulated the nicotine level to increase the addictiveness of cigarettes. Plaintiffs also allege that defendants' fraudulent acts and omissions lulled Norma Rose into a false sense of security, causing her to continue smoking cigarettes.
The elements of viable claims of affirmative fraud, fraudulent concealment and negligent misrepresentation are similar. To demonstrate a prima facie claim of fraud, a plaintiff must demonstrate by clear and convincing evidence the existence of a representation of material fact, falsity, scienter, justifiable reliance and injury (Lanzi v Brooks, 54 AD2d 1057 [3d Dept 1976], affd 43 NY2d 778 [1977]; Small v Lorillard Tobacco Co., 94 NY2d 43 [1999]). A claim of fraudulent concealment is predicated on an act of concealment of a material fact not readily available to the plaintiff, scienter, justifiable reliance, and injury (Kaufman v Cohen, 307 AD2d 113 [1st Dept 2003]; Board of Educ. of Hudson City School Dist. v Sargent, Webster, Crenshaw & Folley, 146 AD2d 190 [3d Dept], appeal denied 75 NY2d 702 [1989]). A viable claim of negligent misrepresentation requires the plaintiff to demonstrate the existence of a representation of material fact, falsity, scienter, justifiable reliance and injury (Grammar v Turits, 271 AD2d [*3]644 [2d Dept 2000]; Fab Indus., Inc. v BNY Fin. Corp., 252 AD2d 367 [1st Dept 1998]).
Here, the expert witnesses retained by each side raise triable issues in their affidavits regarding defendants' knowledge of the health hazards presented by smoking cigarettes and defendants' efforts to keep this information from the public, including Norma Rose, and the extent of Norma Rose's own awareness of these hazards. Summary judgment is a drastic remedy which deprives the litigant of her day in court and should not be granted where a genuine triable issue of material fact exists (Andre v Pomeroy, 35 NY2d 361 [1974]). If there is any doubt as to the existence of a triable issue, or if the issue is even arguable, then summary judgment should be denied (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]).
On behalf of defendants, Jacob Judd, Ph.D., an historian, attests that he has conducted extensive historical research on the issue of public awareness and popular understanding of the relationship between cigarette smoking and disease, as well as the popular recognition of the difficulty people may have quitting smoking. Dr. Judd concludes that, based on his research:
It is my opinion, which I hold with a reasonable degree of historical certainty, that for at least a century New Yorkers have been aware of the general deleterious effects of cigarettes and the difficulty people may encounter in quitting smoking. Since at least the 1940s, it has been common knowledge that smoking is linked to death, disease and addiction. Moreover, since at least the mid 1950s, the specific causal link between smoking and cancer has been common knowledge. Accordingly, the general and specific risks of cigarette smoking and the addictive nature of cigarettes have been known and understood by the American public for years before the first Congressionally mandated warning began to appear on every cigarette pack sold in the United States in 1966.
(Jacob Judd, Ph.D., May 28, 2003, aff., ¶ 57.)
On the other hand, plaintiffs' expert, Louis M. Kyriakoudes, Ph.D., a historian who has conducted extensive research into the history of cigarettes, the cigarette industry, and cigarette use in the United States, attests that cigarette manufacturers disseminated disinformation about the true hazards and risks of cigarette use through the print media and on television. Dr. Kyriakoudes further attests that:
Throughout the 1950s and 1960s, media treatment of smoking-related health issues, including coverage of the 1964 Report of the Surgeon General's Advisory Committee, was countered with media paid for by the cigarette industry * * *. Since 1964, the issue of smoking and health has continued to receive coverage in a variety of public forums, and the cigarette industry has continued to deny the addictiveness of cigarettes and the relationship between smoking and lung cancer and other diseases.

(Louis M. Kyriakoudes, Ph.D., Aug. 8, 2003, aff., ¶¶ 9, 10.) Dr. Kyriakoudes also attests that, from the 1920s through the 1950s, cigarette manufacturers promoted cigarette smoking as a pleasurable activity, harmless to health. Dr. Kyriakoudes further attests that, beginning in the 1950s, the cigarette industry reacted to the negative health information being reported by some news media by creating the Tobacco Industry Research Committee (TIRC), which the industry presented to the public as a sponsor of research into the health risks of cigarette smoking, but which was really a public relations effort intended to "discredit negative health claims and create doubt and confusion in the minds of the public," (Kyriakoudes aff., ¶¶ 27, 28). Dr. Kyriakoudes attests that "Historical polling data show the success of the cigarette manufacturer's strategy in the 1950s through the 1970s. While polling respondents indicate a high level of awareness that there is a 'controversy' or 'debate' over the issue of cigarette use and disease, large numbers of respondents indicate ignorance of or disbelief in the extent of the health risks," (Kyriakoudes aff., ¶ 35). Dr. Kyriakoudes concludes that, "Common knowledge among the public that cigarettes caused cancer and that they are addictive developed slowly, and this knowledge was not common knowledge until very recent times," (Kyriakoudes aff., ¶ 36).
In addition, plaintiffs' expert Andrew E. Smith, Ph.D., an historian, concludes after [*4]review of public opinion polls taken periodically from 1938 through 1999 that:
It is my opinion * * * [that] 'common knowledge' of the fact that cigarettes cause cancer and are an addictive drug did not come into existence among the general public until approximately 1990. It was not until that period that 90 percent of the general public said they thought cigarette smoking was one of the causes of lung cancer * * *. Furthermore, the average smoker clearly lagged behind the average non-smoker in appreciation of cancer and addiction.
(Andrew E. Smith, Ph.D., Aug. 4, 2003, aff., ¶ 8). Dr. Smith concludes that, at the time Norma Rose began smoking, "Gallup polls indicate that approximately half of all adults smoked * * *. Other Gallup data clearly indicate that less than half of American adults, and less than 40 percent of smokers believed smoking was a cause of lung cancer," (Smith aff., ¶ 9 [emphasis in original]).
Significantly, Dr. Smith attests that:
I strongly disagree with Dr. Judd's viewpoint that people understood these risks for centuries, or in 1950, or anytime before 1990, at a level such that it was generally accepted. While anecdotal evidence and obscure tracts and articles spoke out against smoking (for puritanical, as opposed to scientific, reasons), there was also a massive advertising and public relations campaign by the tobacco industry that had an effect of negating and retarding those anti-smoking efforts, thereby impacting the public's knowledge after events such as the 1957 American Cancer Society Report and the 1964 Report of the Surgeon General.
(Smith aff., ¶ 10).
Clearly, then, a triable issue exists regarding whether the hazardous effects of smoking were common knowledge or whether there existed great confusion among consumers regarding the existence of health hazards.
Contrary to defendants' contention, the deposition testimony by Norma Rose indicating that she would have continued smoking no matter what statements were made by defendants does not render plaintiffs unable to prove the essential element of reasonable reliance. In view of plaintiffs' experts' opinion that cigarette manufacturers, including defendants here, intentionally attempted to discredit scientific research raising health concerns and promoted smoking as safe during the decades Norma Rose smoked, whether she relied on defendants' alleged campaign of disinformation, whether such reliance was reasonable and whether she had a duty to research further into the suspected link between smoking cigarettes and health risks present issues of fact reserved for trial. At common-law, a viable claim of fraud exists where the plaintiff acted upon "[m]isrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective," (City of New York v Lead Indus. Assn., 190 AD2d 173, 177 [1st Dept 1993]).
Defendants also contend that summary judgment in their favor on the fraudulent concealment and negligent misrepresentation claims must be granted because plaintiffs cannot prove the existence of a special duty of care or privity of contract between plaintiffs and any of the defendants.
In general, claims of fraudulent concealment and negligent misrepresentation also require the plaintiff to demonstrate the existence of special relationship of trust or confidence between the parties giving rise to a duty to impart correct information (Grammar v Turits, 271 AD2d 644, supra; Fab Indus., Inc. v BNY Fin. Corp., 252 AD2d 367, supra).
Where representations are made to the public at large for the purpose of influencing the action of anyone who may act upon those representations, a common-law cause of action for fraud lies in favor of any individual who acts upon them and is injured thereby * * *. Although generally nondisclosure or concealment alone does not equate to actionable fraud * * *, it is a principle of long standing that 'one who sells an article knowing it to be dangerous by reason of concealed defects is guilty of a wrong, without regard to the contract, and is liable in damages to any person, including one not in privity of contract with him, who suffers an injury by reason of his [*5]willful and fraudulent deceit and concealment.'

(Young v Robertshaw Controls Co., 104 AD2d 84, 86-87 [3d Dept 1984], appeal dismissed 64 NY2d 885 [1985] [citations omitted], quoting Kuelling v Lean Mfg. Co., 183 NY 78, 89 [1905]). Thus, claims based on allegations that the defendant cigarette manufacturers misrepresented to the public material facts about quality and safety of cigarettes have been found to state a valid negligent misrepresentation claim, even absent an allegation that a relationship of privity existed between the parties (see e.g. DaSilva v American Tobacco Co., 175 Misc 2d 424 [Sup Ct, NY County 1997]). Therefore, summary judgment on these claims on the ground of lack of a special duty or contractual privity is denied.
That branch of defendants' motion for summary judgment and dismissal of the fraudulent concealment claim based on conduct occurring after 1969, as preempted by the Labeling Act, is granted in part. In relevant part, the Labeling Act provides that, "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter," (15 USC § 1334 [b]). This language has been interpreted to preempt a claim if the predicate legal duty underlying the claim constitutes a requirement or prohibition, based on smoking and health, imposed under state law, with respect to the advertising or promotion of cigarettes (Cipollone v Liggett Group, Inc., 505 US 504 [1992]). The Appellate Division, Second Department recently considered the issue of preemption of fraudulent concealment claims in tobacco products litigation in Miele v American Tobacco Co. (___ AD2d ___, 2003 WL 23099090 [2d Dept 2003]). The court in Miele rejected the defendant tobacco manufacturers' argument in part, reversed the lower court's dismissal of a virtually identical claim on the ground of preemption and reinstated a portion of the claim. Relying on Cipollone v Liggett Group, Inc. (505 US 504, supra), the Miele court held that the fraudulent concealment claim was not preempted to the extent that it was based on a common-law duty imposed on the defendants to disclose the allegedly concealed material facts through channels of communication other than advertising or promotion (see also In re Kings County Tobacco Litig., 187 Misc 2d 409 [Sup Ct, Kings County 2000]). The Miele court further noted that the common law of this state recognizes a cause of action to recover damages for fraud based on concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair (Miele v American Tobacco Co., supra, at *3, citing Stevenson Equip., Inc. v Chemig Constr. Corp., 170 AD2d 769 [3d Dept 1991], affd 79 NY2d 989 [1992]; Young v Keith, 112 AD2d 625 [3d Dept
1985]). Therefore, summary judgment on the fraudulent
concealment claim in favor of defendants is granted to the extent that the claim is based on defendants' alleged misconduct occurring after 1969 and to the extent that the alleged misconduct involved advertising or promotion.
Next, defendants contend that summary judgment on the fourth and fifth causes of action based on theories of negligent defective design and strict products liability must be granted in their favor because, although cigarette smoking does indeed pose a serious health hazard, plaintiffs cannot prove the existence of a safer, yet feasible, cigarette design.
Summary judgment is denied. "In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury," (Voss v Black & Decker Mfg. Co., 59 NY2d 102, 107 [1983]; Denny v Ford Motor Co., 87 NY2d 248 [1995]). A prima facie claim for negligent design of a defective product differs from a claim of strict products liability in that it requires the plaintiff to demonstrate that the defendant failed to act reasonably in the design of the product (Voss v Black & Decker Mfg. Co., 59 NY2d 102, supra). Plaintiffs' expert witness, William A. Farrone, Ph.D., a former Philip Morris employee, states [*6]that the tobacco companies opted not to develop, pursue or exploit the available technologies to reduce the toxins in cigarettes which can cause cancer and related health problems. Plaintiffs' expert witness, David Michael Burns, M.D., an editor of, and/or contributor to, the 1975, 1976, 1979, and 1980-1986 Surgeon General's reports, attests that designs for safer cigarettes were and are possible, including designs for cigarettes that are free of nicotine and ones that deliver nicotine with markedly lower levels of the toxic constituents in cigarette smoke. Dr. Burns also attests that cigarette manufacturers were able to, and did, design products which were safer than those actually marketed, and yet would still remain functional and reasonably priced. Dr. Burns opines that defendants chose not to market them because they were unwilling to admit that cigarettes posed any health risks at all. With these expert witness opinions, plaintiffs have raised triable issues regarding whether the risk of harm posed by cigarettes could have been reduced or avoided by the adoption of a reasonable alternative design and whether defendants' objective was to entrap cigarette smokers in order to increase their profit.
Defendants also contend that summary judgment in their favor is appropriate on the design defect claims on the ground that plaintiffs cannot demonstrate that the cigarettes smoked by Norma Rose were not in a condition reasonably expected by the ultimate consumer because, after the Labeling Act went into effect in 1969, defendants printed health warnings on every cigarette pack manufactured for sale.
The Appellate Division, Second Department has recently considered this issue in Miele v American Tobacco Co., supra, an action which defendants admit includes claims virtually identical to the post-1969 design defect claims asserted here. In Miele, the court held that, "the determination of whether a design defect is actionable requires a balancing of the risks and utilities of the product, with the consumer's degree of awareness of the product's potential danger being but one factor to consider in that analysis," (Miele v American Tobacco Co., supra, *3, citing Scarangella v Thomas Built Buses, 93 NY2d 655 [1999]; Restatement [Third] of Torts, Products Liability § 2, Comment G [FN2]). The Miele court reversed the lower court's grant of summary judgment in the defendant tobacco manufacturers' favor solely on consumer expectation grounds and reinstated the post-1969 design defect claims.
The factors to be considered in balancing the risks inherent in the product, as designed, against its utility and cost, include:
(1) the utility of the product to the public as a whole and to the individual user; (2) the nature of the productthat is, the likelihood that it will cause injury; (3) the availability of a safer design; (4) the potential for designing and manufacturing the product so that it is safer but remains functional and reasonably priced; (5) the ability of the plaintiff to have avoided injury by careful use of the product; (6) the degree of awareness of the potential danger of the product which reasonably can be attributed to the plaintiff; and (7) the manufacturer's ability to spread any cost related to improving the safety of the design.
[*7]
(Voss v Black & Decker Mfg. Co., 59 NY2d at 109; Denny v Ford Motor Co., 87 NY2d 248, supra). Generally, these factors present issues of material fact for the jury to decide (DiMura v City of Albany, 239 AD2d 828 [3d Dept 1997]).
 As discussed above, plaintiffs have raised triable issues sufficient to preclude summary judgment on the post-1969 design defect claims. Plaintiffs' expert witness, Dr. Farrone, attests that the defendant tobacco manufacturers had the ability to produce a less harmful cigarette, but chose not to do so. Dr. Burns attests that reasonably priced cigarettes in a safer design were developed by tobacco manufacturers during the decades Norma Rose smoked, but were not manufactured for consumer use.
Defendants next contend that summary judgment must be granted in their favor on the branches of the claims for design defects prior to July 1, 1969, on the ground that the dangers of cigarette smoking were a matter of common knowledge. As discussed above, whether the health risks of smoking were a matter of public knowledge and Norma Rose's knowledge of these risks present triable issues of fact. Therefore, summary judgment on this branch of the design defect claims is denied.
Defendants contend that summary judgment must be granted in Philip Morris' favor on the branches of the claims for failure to warn and fraudulent concealment based on pre-1969 conduct on the ground that plaintiffs do not allege that Norma Rose smoked a Philip Morris product prior to the enactment of the Labeling Act.
In order to recover on a claim sounding in tort, a plaintiff must plead and prove a causal link between the injury and the actions of the defendant. In a tobacco products action, no causal link exists where the plaintiff did not smoke the defendant tobacco manufacturer's products; therefore, the claims against that defendant must be dismissed (Magnus v Fortune Brands, Inc., 41 F Supp 2d 217 [ED NY 1999]; Fink v American Tobacco Co., Sup Ct, NY County, Jan. 26, 1999, Lebedeff, J., Index No. 110336/97; Canan v Philip Morris Inc., Sup Ct, NY County, Jan. 6, 1999, DeGrasse, J., Index No. 105250/98).
In the present action, by decision and order issued under the earlier index number and dated August 13, 1998, Judge Lebedeff dismissed the Roses' claims asserted in the second amended complaint against Lorillard Tobacco Company and Liggett & Meyers on the ground that Norma Rose did not smoke the brands of cigarettes manufactured by these defendants. Here, a review of Norma Rose's deposition testimony reveals that Norma Rose did not smoke cigarettes manufactured by Philip Morris until the mid-1970s, when she smoked the Merit, Parliament and Benson & Hedges brands. Therefore, summary judgment is granted on the branches of the fraudulent concealment and failure to warn claims based on pre-1969 conduct asserted against Philip Morris and those branches are dismissed.
On behalf of all defendants, R.J. Reynolds in motion sequence No. 005 contends that summary judgment must be granted dismissing the implied warranty, design defect, strict products liability and negligence claims as preempted by the Labeling Act, to the extent that they are based on conduct occurring after July 1, 1969, the effective date of the Act. Brown & Williamson, individually and as successor by merger to The American Tobacco Co., in motion sequence No. 006 contends that summary judgment must be granted in defendants' favor on the express and implied warranty causes of action in accordance with sections 2-314 and 2-315 of the Uniform Commercial Code.
In the seventh and eighth causes of action for breach of the implied warranties of merchantability and fitness for a particular purpose, plaintiffs allege that defendants impliedly warrantied that the cigarettes they manufactured were in a condition to be ingested, inhaled and consumed without presenting a health hazard, although they knew that the cigarettes were addictive and unreasonably dangerous to the health and well-being of smokers. In the fitness for a particular purpose claim, plaintiffs also allege that defendants knew or should have known that smokers would rely upon defendants' skill and knowledge to furnish cigarettes that were suitable for smoking without incurring personal injury, yet manipulated the amount of nicotine in their cigarettes to increase their addictive quality.
[*8]
To recover on a theory of breach of the implied warranty of merchantability, a plaintiff must establish that the product was not reasonably fit for the purpose for which it was intended and that the defect was the proximate cause of the plaintiff's injury (Denny v Ford Motor Co., 87 NY2d 248, supra; see UCC § 2-314 [2] [c]). To recover on a theory of breach of the implied warranty of fitness for a particular purpose, "the buyer must establish that the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and that the buyer did in fact rely on that skill," (Saratoga Spa & Bath, Inc. v Beeche Sys. Corp., 230 AD2d 326, 331 [3d Dept], lv dismissed 90 NY2d 979 [1997]; see UCC § 2-315). Whether a product is defective for purposes of a breach of implied warranty claim under the Uniform Commercial Code requires an inquiry into the consumer's "expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners," (Denny v Ford Motor Co., 87 NY2d at 258-59).
Thus, to prevail on the implied warranty claims, plaintiffs here must demonstrate the Norma Rose expected that defendants' cigarettes were neither addictive nor carcinogenic and that defendants' cigarettes failed to meet these expectations. As discussed above, whether the health risks of smoking were a matter of public knowledge and the extent of Norma Rose's knowledge and understanding of these risks present triable issues of fact. Therefore, summary judgment on these claims on this ground is denied.
Defendants further contend that the breach of warranty claims implicitly include a failure to warn claim and, like the failure to warn claim, are expressly preempted by the Labeling Act, to the extent that they are based on post-1969 conduct.
As discussed above, a claim is expressly preempted by the Labeling Act if the predicate legal duty underlying the claim constitutes a requirement or prohibition, based on smoking and health, imposed under state law, with respect to the advertising or promotion of cigarettes (Cipollone v Liggett Group, Inc., 505 US 504, supra). A claim is not preempted by the Labeling Act to the extent that it is based on a duty imposed by New York common law to disclose material facts regarding smoking and health through channels of communication other than advertising or promotion (see Miele v American Tobacco Co., supra). Therefore, that branch of defendants' motion is granted to the extent that summary judgment in favor of defendants on the seventh and eighth causes of action is granted to the limited extent that these claims are based on defendants' alleged misconduct which occurred after 1969 and involved advertising or promotion.
Defendants contend that summary judgment must be granted in their favor on the breach of an express warranty claim because plaintiffs have not identified with any level of particularity any specific statements by any of the defendants upon which they relied.
An express warranty is created by a seller's affirmation of fact or promise which induces the buyer to purchase the product (Friedman v Medtronic, Inc., 42 AD2d 185 [2d Dept 1973]). If the jury finds that the product does not conform to the seller's affirmative representation, then the warranty has been breached (Randy Knitwear, Inc. v American Cyanamid Co., 11 NY2d 5 [1962]; Friedman v Medtronic, Inc., 42 AD2d 185, supra).
Here, plaintiffs' expert witnesses attest that, during the decades Norma Rose smoked cigarettes, defendants expressly represented that their cigarettes did not present a hazard to health. Defendants now admit that cigarettes did pose health hazards during that period. With this evidence, plaintiffs have raised triable issues sufficient to preclude summary judgment on the sixth cause of action for breach of express warranty.
Defendants next contend that the design defect claims are barred by the doctrine of conflict preemption on the ground that any finding of tort liability for the manufacture and marketing of cigarettes would constitute a ban on cigarette manufacture and sale. Defendants further contend that such a finding would, therefore, conflict with the legislature's intent in enacting the Labeling Act, and its predecessors, which permit the manufacture and sale of tobacco products, while regulating the labeling and advertising of these products.
[*9]
The doctrine of conflict preemption is not applicable in the circumstances presented here. "[C]onflict preemption * * * occurs 'when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress,' " (United States v Locke, 529 US 89, 109 [2000], quoting California v ARC America Corp., 490 US 93, 100-10 [1989]).
Plaintiffs' fourth and fifth causes of action are premised on a theory that cigarettes, as designed, are a defective product which causes cancer and addiction. Plaintiffs specifically allege that defendants "failed to employ the state of knowledge and technology * * * available to the tobacco industry [and] * * * were negligent in the manner that they tested, researched, and sold their cigarettes in that they did not learn of the addictive quality of their cigarettes and/or they learned of the addictive quality and failed to warn * * * that the cigarettes they manufactured were addictive," (second amended verified complaint, ¶¶ 222-23). Plaintiffs further allege that defendants "breached their duty of care by failing to design a cigarette that was not addictive and/or did not contain dangerous levels of tar and nicotine," (second amended verified complaint, ¶ 224). Nothing in these claims conflicts with the Labeling Act or its predecessors.
Moreover, defendants have failed to demonstrate that, in enacting the Labeling Act or its predecessors, Congress intended to permit defendants to manipulate the nicotine levels present in cigarettes to increase their harmful nature or to fail to appropriately research and test the safety of the cigarettes' design prior to manufacture and sale, as is alleged by plaintiffs. In addition, as discussed above, the extent of defendants' knowledge of the health hazards posed by cigarettes, the feasibility of other designs and Norma Rose's own knowledge and understanding of the health hazards presented by smoking cigarettes present issues of material fact reserved for trial.
Therefore, that branch of the motion to dismiss the design defect claims on the ground of conflict preemption is denied.
That branch of the motion for summary judgment dismissing the tenth cause of action for loss of consortium asserted by Leonard Rose is denied. Inasmuch as some of the primary claims survive defendants' motions for summary judgment, the derivative claim must also survive (see Holmes v City of New Rochelle, 190 AD2d 713 [2d Dept 1993]).
In motion sequence No. 006, on behalf of all defendants, Brown & Williamson, individually and as successor by merger to The American Tobacco Co., contends that the tort claims are time-barred by the three-year statute of limitations governing toxic torts on the ground that plaintiffs' claims were asserted more than three years after Norma Rose first became aware that she was addicted to cigarettes or first began experiencing the symptoms of lung cancer or related neurological damage.
In opposition, plaintiffs contend that the claims are timely on the ground that addiction is not claimed to be Norma Rose's physical injury, but is merely the reason why she was unable to quit smoking until 1993. Plaintiffs further contend that Norma Rose did not became aware that she had suffered any personal injury until 1995, when she was diagnosed as suffering from lung cancer and PNCD.
Plaintiffs' tort claims are timely alleged. In order to recover damages for personal injury caused by the latent effects of exposure to any substance or combination of substances, a plaintiff must commence an action within three years from the "date of discovery of the injury or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier," (CPLR 214-c [2]). The date of discovery is not dependent upon discovery of the cause of the injury, but upon discovery of the primary medical condition (Whitney v Agway Inc., 238 AD2d 782 [3d Dept 1997]). The term "injury" as used in the statute refers "to an actual illness, physical condition or other similarly discoverable objective manifestation of the damage caused by previous exposure to an injurious substance," Sweeney v General Print., Inc., 210 AD2d 865, 865-66 [3d Dept 1994], lv denied 85 NY2d 808 [1995]).
Plaintiffs commenced this action by filing the complaint on December 18, 1996. Therefore, in order for the tort claims to have been timely interposed, Norma Rose must have [*10]discovered the physical condition for which she seeks recovery, or have been able to have discovered it with reasonable diligence, no earlier than December 18, 1993. A review of the pleadings indicates that Norma Rose is seeking to recover monetary damages sustained as the result of her development, not of an addiction to nicotine, but of lung cancer and PNCD, a rare cancer-related neurological problem, caused by her consumption of defendants' cigarettes beginning in the early 1950s. Neither medical condition was diagnosed until March 1995, well within the three-year limitations period.
Contrary to defendants' argument, the incidents of dizziness, headache, vertigo and fatigue Norma Rose began experiencing in August 1993, some five months after she quit smoking, cannot be held to have triggered the running of the limitations period. Immediately upon experiencing these symptoms, Norma Rose sought treatment. On examination, these symptoms were diagnosed as "positional dizziness" and the drug Antivert was prescribed to treat the dizziness. Nothing in the record objectively and conclusively demonstrates that Norma Rose's symptoms were early warning signs of lung cancer or PNCD or that Norma Rose was experiencing symptoms of these conditions or that she should have sought further treatment after receiving the initial diagnosis.
That branch of the motion for summary judgment and dismissal of all claims asserted against Brown & Williamson, individually, is granted. As discussed above, in a tobacco products action, no causal link exists where the plaintiff did not smoke the defendant tobacco manufacturer's products. Norma Rose admittedly never smoked any cigarettes manufactured by Brown & Williamson in its individual capacity. Therefore, all claims asserted against Brown & Williamson, individually, are dismissed.
Defendants next contend that summary judgment must be granted and all claims asserted against Brown & Williamson, as successor by merger of American Tobacco, dismissed on the ground that plaintiffs cannot establish a causal relationship between Norma Rose's use of American Tobacco's Pall Mall cigarettes and Norma Rose's injury.
This branch of the motion is denied. Norma Rose unequivocally testified that she smoked Pall Mall cigarettes in the 1960s. There is no dispute that cigarettes cause cancer and are addictive. There is also no dispute that Norma Rose developed lung cancer and PNCD. Contrary to defendants' contention, any determination regarding whether Norma Rose's use of this brand was so minimal or so distant in time from the physical injuries diagnosed in 1995 must await trial. Therefore, plaintiffs have raised triable issues sufficient to preclude summary judgment on the claims asserted against Brown & Williamson, as successor by merger of American Tobacco.
Defendants contend that summary judgment must be granted in their favor on the sixth, seventh and eighth causes of action for breach of express and implied warranties on the ground that they are partially time-barred by the four-year statute of limitations to the extent that they are based on cigarettes purchased prior to December 18, 1992, four years prior to the date the complaint was filed.
This branch of motion sequence No. 006 is granted without opposition by plaintiffs. Section 2-725 of the Uniform Commercial Code "provides that a cause of action for breach of a contract of sale must be commenced within four years after it accrues. The action accrues when the breach occurs and, in the absence of a warranty explicitly extending to future performance, a breach occurs when tender of delivery is made," (Heller v U.S. Suzuki Motor Corp., 64 NY2d 407, 410 [1985]). Therefore, that branch of the motion to dismiss the breach of warranty claims as time-barred is granted and the claims dismissed to the extent that they are based on cigarette brands smoked by Norma Rose prior to December 18, 1992.
Defendants also contend that Norma Rose's deposition testimony establishes that the only brand of cigarettes she smoked from December 18, 1992, through February 26, 1993, the date she quit smoking, were Benson & Hedges manufactured by Philip Morris, and that, therefore, summary judgment in defendants' favor must be granted on those portions of the breach of warranty claims arising from the sale of cigarettes manufactured by the other defendants. [*11]Defendants have accurately summarized Norma Rose's deposition testimony regarding the brands of cigarettes she smoked and the years in which she smoked each branch identified. Thus, that branch of the motion is granted on this ground.
Defendants also contend that the remaining branches of the breach of warranty claims must be dismissed because the alleged breaches were not the proximate cause of Norma Rose's injuries; the undisputed record demonstrates that her injuries were caused instead solely by her continued smoking with knowledge of the health risks.
 As discussed above, triable issues exist as to the extent of Norma Rose's knowledge and understanding of the health risks presented by cigarette smoking. Therefore, summary judgment on this ground on the remaining portions of the breach of warranty claims is denied.
The court has considered the parties' remaining arguments and finds them to be without merit.
Accordingly, it is
ORDERED that motion sequence No. 004 is granted in part as follows:
1) summary judgment in favor of all defendants is granted on the branches of the first, second and third causes of action which may be interpreted as asserting claims for fraudulent concealment arising after July 1, 1969, and those branches are dismissed;
2) summary judgment in favor of defendant Philip Morris Incorporated is granted on the first cause of action for fraudulent concealment and failure to warn arising prior to July 1, 1969, and those claims are dismissed as against that defendant; and it is further
ORDERED that motion sequence No. 005 is granted in part and summary judgment in favor of all defendants is granted on those branches of the seventh and eighth causes of action for breach of the implied warranties of merchantability and fitness for a particular purpose arising after July 1, 1969, and involving advertisements or promotion and those branches of those claims are dismissed; and it is further
ORDERED that motion sequence No. 006 is granted in part as follows:
(1) summary judgment in favor of defendant Brown & Williamson in its individual capacity is granted and all claims asserted against it in that capacity are dismissed;
(2) summary judgment in favor of all defendants on those branches of the sixth, seventh and eighth causes of action for breach of express and implied warranties arising prior to December 18, 1992, is granted and those branches of those claims are dismissed;
(3) summary judgment in favor of defendants R.J. Reynolds Tobacco Company and Brown & Williamson, individually and as successor by merger with The American Tobacco Company, is granted on those branches of the sixth, seventh and eighth causes of action for breach of express and implied warranties arising after December 18, 1992, is granted and those branches are dismissed as against those defendants; and it is further
ORDERED that the remainder of the action shall continue.
This constitutes the decision and order of the Court.
Dated: February 20, 2004
J.S.C.
Decision Date: February 20, 2004
Footnotes

Footnote 1: By order dated September 18, 1998, issued under index number 122131/96, an earlier index number purchased by plaintiffs, the Honorable Diane A. Lebedeff dismissed all claims asserted against defendants The Tobacco Institute, Inc., Fortune Brands, Inc., Lorillard Tobacco Companies, Inc., RJR Nabisco, Inc., Liggett & Myers Tobacco Company, and The Council for Tobacco Research,-U.S.A., Inc. Judge Lebedeff also dismissed the concerted action, conspiracy, and aiding and abetting claims. By stipulation of discontinuance bearing the earlier index number and so-ordered by this court on July 26, 1999, plaintiffs and defendants voluntarily discontinued with prejudice all claims asserted against defendant The Council for Tobacco Research U.S.A., Inc.

Footnote 2: Comment g of section 2 of Restatement (Third) of Torts, Products Liability, provides as follows:
[C]onsumer expectations do not constitute an independent standard for judging the defectiveness of product designs.
 * * * The mere fact that a risk presented by a product design is open and obvious, or generally known, and that the product thus satisfies expectations * * * may substantially influence or even be ultimately determinative on risk-utility balancing in judging whether the omission of a proposed alternative design renders the product not reasonably safe. It follows that, while disappointment of consumer expectations may not serve as an independent basis for allowing recovery under [the design defect theory], neither may conformance with consumer expectations serve as an independent basis for denying recovery. Such expectations may be relevant in both contexts, but in neither are they controlling.