OPINION OF THE COURT
Herbert Kramer, J.
Harry Frankson was 13 years old when he began to smoke in 1954. Within a year he was smoking a pack of cigarettes a day. *611 In the 1990s he made a number of attempts to quit smoking, but could not do so. He was diagnosed with lung cancer in September of 1998 and died of lung cancer caused by cigarette smoking in February of 1999. Trial of this action commenced on November 17, 2003.[1] On December 18, 2003, the jury returned a verdict awarding a total of $350,000 for compensatory damages of which $100,000 was awarded for conscious pain and suffering. On January 9, 2004, the jury assessed a verdict of $20,000,000 in punitive damages against the defendants. The jury apportioned 50% of the responsibility to the plaintiff’s decedent.
Over the past six years, this court has presided over approximately 50 individual smoker suits, three of which have gone to verdict. The first two verdicts were defendants’ verdicts. In the course of this period, this court conducted extensive discovery proceedings, made hundreds of rulings, supervised jury selection and looked at hundreds, if not thousands of pages of documents and as a result became very familiar with the essentially “closed” universe of tobacco litigation. Many of the issues that were raised in the instant suit were previously litigated and decided. Here, as previously, much of the work of the court involved the structuring of a streamlined litigation procedure that would afford both sides a fair opportunity to present their cases while appropriately limiting the voluminous amount of information that threatened to inundate rather than illuminate the jury.[2] Thus, this court created guidelines for document discovery, rules for taking fact witness depositions, modes for limiting expert testimony and methods for determining the admission or preclusion of evidence.
Many of the court’s rulings upon these and related issues in the instant case were restatements of its earlier pretrial and *612 trial rulings which were reached usually after lengthy argument and briefing by both sides and much considered deliberation. Accordingly, this court is annexing and incorporating herein some of its earlier decisions upon which it relied in guiding the course of this trial: July 25, 2000, deciding the question of whether a cause of action lies for the willful failure to warn; March 28, 2001, deciding whether business documents retrieved from the World Wide Web are admissible; June 20, 2003, short form order deciding defendants’ motion to compel certain authorizations; June 23, 2003, short form order fashioning a mechanism for the examination of certain cytology slides; September 23, 2003, decision after an in camera review of decedent’s military records; and December 1, 2003, decision on various evidentiary issues. Also incorporated by reference are two contemporaneous, separately published decisions of June 22, 2004 dealing with the following additional issues, raised in defendants’ motion for a new trial: (A) whether the defendants were entitled to waive the affirmative defense of comparative fault; (B) whether this court properly precluded evidence of unsubstantiated scientific opinion.
Discovery
The defendants argue that they were not given the opportunity to depose certain unspecified fact witnesses — an argument that appears to be belied by correspondence copied to this court which indicated that any remaining difficulties in this regard were resolved. Be that as it may, this court was mindful of the fact that a lawsuit can have a ripple effect and impose intrusive and burdensome obligations upon individuals who may have only the vaguest and most remote connections to the case. Accordingly, this court streamlined the number of nonparty depositions to be taken from individuals whose testimony could, at best, have been described as cumulative by imposing a “decade rule” which provided for the deposition of one fact witness for each decade the smoker smoked in addition to the deposition testimony of the parties.[3]
The defendants do not specify which authorizations were denied to them or the nature of the pathology that they were unable to obtain. After hearing extensive argument on these issues, this court granted many of the defendants’ requests for *613 authorizations and insured that the defendants would have access to the fragile specimens that they needed to work with. (See short form orders dated June 20, 23, 2003.) As far as records were concerned, this court examined the decedent’s military records in camera, extracted the relevant information therein and conveyed it to the defendants by order dated September 23, 2003.
Addiction
Defendants assert that claims made by the plaintiff with respect to addiction are time-barred. All of the remaining contentions made with respect to the injection of addiction into this trial are premised upon this assumption. This assumption is incorrect. “The Statute of Limitations for a toxic tort begins to run ‘from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier’ (CPLR 214-c [2]).” (Scheidel v A.C. & S., 258 AD2d 751, 752 [3d Dept 1999].) “[T]he time for bringing the action begins to run under the statute when the injured party discovers the primary condition on which the claim is based.” (Matter of New York County DES Litig., 89 NY2d 506, 509 [1997] [emphasis added].) Addiction to nicotine is not the “primary condition” upon which the plaintiffs claim is based, rather it is lung cancer caused by cigarette smoking. (Accord Rose v American Tobacco Co., 3 Misc 3d 1103[A], 2004 NY Slip Op 50355[U] [Sup Ct, NY County 2004].) Mr. Frankson’s lung cancer was not diagnosed until September 1998. The complaint was filed in the year 2000, well within the three-year limitations period.
The Admission of Exhibits
Defendants contend that the court’s “pre-trial admission” of exhibits was error, claiming apparently that their objections to relevance and foundation were not entertained. Such is not the case. Foundation, that is, authentication for these documents, was provided by the fact that the vast majority of them were posted to the World Wide Web by the defendants pursuant to a consent decree in the State of Minnesota. Other documents were posted to the Web sites of the individual defendants. By decision and order in Anderson v Fortune Brands (Index No. 42821/97) dated March 28, 2001, and annexed hereto, this court set forth its reasoning for the admission of these documents, not only as to foundation but with respect to other evidentiary issues that were raised. Extensive portfolios were maintained listing each of the documents and the rulings of this court as to *614 their admissibility in the previous trials. In this case, document lists were created annexing this information. The parties acceded to those rulings, essentially reserving issues of “foundation” and relevance, and where admission was sought for a document not previously considered, the court examined the document and heard argument upon it before ruling upon its admissibility.
Compensatory Damages
Notwithstanding defendants’ claims with respect to the conduct of this trial, the jury was apparently able to parse the respective claims of the parties and reach a verdict finding Mr. Frankson 50% responsible for his injuries. This jury awarded modest compensation for economic harm, and in this court’s view, its verdict of $100,000 for conscious pain and suffering deviated materially from what would be reasonable compensation. (See e.g. Birkbeck v Central Brooklyn Med. Group, P.C., 2001 NY Slip Op 40133[U] [Sup Ct, Kings County 2001] [and cases cited therein].)
Accordingly, a new trial is directed on damages unless defendants stipulate to an increase of $150,000 in the award made for conscious pain and suffering.
Punitive Damages
The jury awarded punitive damages in this case in accordance with the following schedule: American Tobacco: $2,000,000; Brown & Williamson: $6,000,000; Tobacco Institute Inc. (TI): $6,000,000; and the Council for Tobacco Research (CTR): $6,000,000.
This court is mindful of the fact that the United States Supreme Court has set guidelines to insure that there is a sensible and fair relationship between the amount of compensatory damages that are awarded in a given case and the punitive damages. In this case, the compensatory damages were $350,000 and even if the increased award totaling $250,000 for conscious pain and suffering is taken into account, the punitive damage award is more than 40 times the total amount awarded for compensatory damages, even before the percentage of fault allocated to the plaintiff is factored in.
While this court is unwilling to consider a punitive damages cap of 4 to 1 in a wrongful death suit, it finds that the ratio of punitive damages to compensatory damages that obtained here is neither sensible nor fair. Under the facts and circumstances of this case, this court believes that assessing an amount of *615 $5,000,000 in punitive damages is a far more fitting and fair ratio.
The punitive damages shall be apportioned as follows. Since there are substantial questions that arise with respect to the issue of Brown & Williamson’s successor’s liability for torts committed by its predecessor, and assuming without deciding that question in favor of Brown & Williamson, the $2,000,000 assessed against American Tobacco is hereby vacated. Since Brown & Williamson’s primary role in the period that the plaintiff smoked was its role in the conspiracy, the $6,000,000 assessed against Brown & Williamson is reduced to $4,000,000. Finally, although CTR and TI may no longer exist, assessing nominal punitive damages is not without substance as such assessment may well have a deterrent effect upon others. Accordingly, the awards of $6,000,000 assessed against TI and CTR are reduced to $500,000 each.
Accordingly a new trial is directed upon punitive damages unless the plaintiff stipulates to reduce the verdict in accordance with this court’s excessiveness determination.
Defendants’ motions for a new trial and to strike or in the alternative remit the amount of punitive damages are granted to the extent that the punitive damages award is remitted as indicated herein and are otherwise denied. Plaintiffs motion for an additur is granted as indicated herein.

. Plaintiff, in a complaint initially filed July 21, 2000, alleged that the defendants, as coconspirators and individually, willfully and negligently failed to warn Harry Frankson of the dangers of cigarette smoking prior to July 1, 1969 and during this time period fraudulently concealed the dangers of cigarette smoking from him. Plaintiff also made claims sounding in negligence and strict liability for product defects.

. As an interesting side bar, the executive summary to the 2004 Surgeon General’s report on tobacco recites the following: “In preparing this report, the literature review approach was necessarily selective. For conditions for which a causal conclusion had been previously reached, there was no[ ] attempt to cover all relevant literature, but rather to review the conclusions from previous Surgeon General’s reports and focus on important new studies for that topic. The enormous scope of the evidence precludes such detailed reviews.” (Emphasis added.)

. Indeed, in light of the fact that much of this evidence would be relevant primarily to the defense of comparative fault and indeed the defendant sought to waive that defense on the eve of trial, it is difficult to imagine how the defense can now claim prejudice by virtue of the limitations this court imposed.